## JOHN EARLE, Jr. *vs.* ADIN HALL.

The general owner of real estate is not answerable for acts of carelessness, negligence and mismanagement committed upon or near his premises, to the injury of others, if the conduct of the business which causes the injury is not on his account, nor at his expense, nor under his orders or efficient control.

Where A. agreed to convey land to B. and B. agreed to build a house thereon and pay for the land, and while the agreement was in force, B., in preparing to build the house on his own sole account, by workmen employed by himself alone, undermined the wall of the adjoining house of C., whereby it was injured ; it was held that A. was not answerable for this injury, although the title to the said land remained in him at the time when the injury was committed.

TRESPASS *quare clausum fregit.* The declaration alleged that the defendant, and one Asahel Gilbert on whom the writ was not served, on the 15th of December, 1836, broke and entered the plaintiff's close, and undermined a wall standing upon the partition line between the houses of the plaintiff and the defendant, in Lynde Street, Boston, whereby said wall, and the brick house of the plaintiff, had been greatly cracked, broken and settled, and had become unsafe, &c.

The trial was before *Morton*, J. and the facts reported by him, so far as they bear upon the matter decided by the whole court, were in substance these :

On the 6th of May, 1836, an agreement under seal was made by Hall, the defendant, and Asahel Gilbert, in which it was re-

cited that Gilbert proposed to purchase of Hall a lot of land in Lynde Street, adjoining, on one side, upon the land on which the plaintiff's house (mentioned in his declaration) stands, and to pay therefor the sum of $ 3053·75, with interest, on the 1st of October, 1836. Said Gilbert agreed " to commence building forthwith a brick house on said land," (stating the dimensions of the house) " and the same to finish on or before the first day of October next." Said Hall agreed, " upon receiving the price or consideration money, to convey said estate to said Gilbert in fee simple, with a good title and general warranty." Each party covenanted with the other that he would well and truly perform all things which, on his part, were necessary or proper to be done to carry said agreement into effect. And it was agreed, that if either party should fail to perform his said agreement, he should pay the other $ 1000 as liquidated damages, or that application might be made to a court of chancery to obtain specific performance of the agreement.

On the 1st of October, 1836, Hall indorsed on the aforesaid agreement, that the time for building the house was " continued for one month " from that date ; and by another indorsement, the time was " continued till 20th January, 1837." Under date of November 10th, 1836, Hall indorsed on the agreement, that he had " received of A. Gilbert, fifty shares bank stock to be accounted for in our settlement." A like indorsement of thirty-six shares of bank stock was also indorsed under the same date.

On the 1st of November, 1836, Hall, the defendant, conveyed the said lot of land, with the house thereon, to said Gilbert. Gilbert on the same day mortgaged it to Messrs. Guild & Savage to secure payment of $ 5000 lent to him by them ; and also conveyed it back to Hall, subject to said mortgage.

On the 1st of February, 1837, Hall & Gilbert settled their accounts, and Gilbert gave Hall a note for the balance which he owed him, including the amount which was to be paid for said lot of land, and interest, under the aforesaid agreement of May 6th, 1836 ; and Hall engaged in writing to convey said lot and house (with certain other property) to Gilbert, by quitclaim

deed, on Gilbert's paying what there was, and thereafter should be, due from him to Hall.

The defendant called Gilbert as a witness ; and he testified that " he built a house, on the lot aforesaid, adjoining the house of the plaintiff, on his own account : ، That he hired and employed the workmen and made the contract : That he employed others, but was employed by no one, and that Hall had nothing to do with it : That the house was not finished till the spring of 1837, but that the contract of May 6th, 1836, was in force until Hall and he made a settlement, February 1st, 1837."

At the time of the alleged injury to the plaintiff's house, the same was under mortgage to the Hospital Life Insurance Company, to secure payment of a certain sum on the 7th of March, 1839. Said mortgage bore date March 7th, 1834.

It appeared in evidence, that the workmen employed in the preparations for building the house aforesaid, adjoining the house of the plaintiff, and laying the foundation thereof, dug out the earth under the wall of the plaintiff's house. There was much testimony respecting the damages alleged in the plaintiff's declaration, and the cause thereof ; and a verdict was found for the plaintiffs under the instructions of the judge, subject to the opinion of the court, on the facts reported by him, whether the defendant was by law answerable for said damages. The defendant also filed a motion for a new trial, on the ground that the damages assessed by the jury were excessive.

*Fletcher & Derby,* for the defendant.

*S. D. Parker & Choate,* for the plaintiff.

The main question in the case, viz. whether the defendant was answerable for the acts of Gilbert and his workmen, was elaborately argued. The same authorities, for the most part, were cited and commented upon by the counsel on both sides.

The following cases were cited, in addition to those which are mentioned in the opinion of the court. *Weyland* v. *Elkins,* Holt N. P. 229, & *note.* *Dean* v. *Branthwaite,* 5 Esp. R. 35. *Sammell* v. *Wright,* 5 Esp. R. 263. *Regina* v. *Bucknall,* 2 Ld. Raym. 804. *Regina* v. *Watson,* 2 Ld. Raym. 856. *Rider* v. *Smith,* 3 T. R. 766, and cases there cited. *Cheetham*

v. *Hampson*, 4 T. R. 318. *Sly* v. *Edgley*, 6 Esp. R. 6. *Rich* v. *Coe*, Cowp. 636. *Randleson* v. *Murray*, 8 Adolph. & Ellis, 109. *Matthews* v. *West London Water Works Co.* 3 Campb. 403. *McKenzie* v. *McLeod*, 10 Bing. 385. *Gregory* v. *Piper*, 9 Barn. & Cres. 591. *Rosewell* v. *Prior*, 2 Salk. 460. *Fenton* v. *City of Dublin Steam Packet Co.* 8 Adolph. & Ellis, 835. 1 Leigh's Nisi Prius, 586 – 591.

SHAW, C. J. 1. A preliminary objection, taken by the defendant to the maintenance of this action, is, that the plaintiff, having mortgaged his estate to the Hospital Life Insurance Company, is not the owner in fee, and cannot maintain this action of trespass. It is among the most familiar rules of law, that a plaintiff need not be the owner of an estate to maintain trespass *quare clausum fregit.* He may have a lawful possession, which is sufficient to enable him to maintain an action for an injury to the possession. But further ; a mortgagor in possession, before entry by the mortgagee, and especially before condition broken, is to most purposes regarded as owner of the estate. The fee is considered to be in the mortgagee, for all purposes necessary to the security of his debt ; but in other respects, and as to strangers, a mortgage is considered merely as a pledge. In the present case, the plaintiff had mortgaged his estate for the security of a debt payable in five years, which term had not expired at the time of the supposed trespass, and the condition was not then broken. The court are therefore of opinion that such mortgage did not affect the plaintiff's right to maintain the action.

2. Nor do we think the rights of these parties are affected by the deed made by Hall to Gilbert, to enable him to execute a mortgage to Messrs. Guild & Savage, after which Gilbert reconveyed to Hall. The manifest object of the transaction was, to enable Gilbert to make a good charge on the estate, as security for a loan of money, and that end being accomplished, to place the parties in the same situation, which they were in before. The relative rights of Hall & Gilbert, under their previous contracts, remained as before. Hall's obligation to convey, and Gilbert's obligation to build, and pay for the land, were the same after these conveyances as before.

3. But the main question is, whether this action can be maintained against the defendant, to recover damages for acts done by Gilbert; and this depends upon the relation in which they stood to each other.

The ground taken by the plaintiff is, that the defendant was owner in fee of a lot of land adjoining his own; that acts were done on that land, pursuant to some arrangement made between the defendant and Gilbert, by which the plaintiff's partition wall was undermined and injured; and that, for this damage, the defendant, as such employer and owner, is responsible. Whether trespass would be the proper form of action to try that question, where the principal has commanded the particular act to be done, we give no opinion; it not having been made in the argument. It would probably be a mere question of costs, not affecting the merits.

The principle that a master or employer of another is responsible in damages to a third person, for negligence, carelessness, want of skill in the service, in which he is engaged, or in pursuing the business for which he is employed, is well settled, as well in this Commonwealth as in England. *Sproul* v. *Hemmingway*, 14 Pick. 1. *Stone* v. *Codman*, 15 Pick. 297. It will not be necessary to consider the general question, when and to what cases the maxim *respondeat superior* applies; because it is manifest that the question now before us must depend upon that branch of the subject, which affects the owners and occupiers of real estate, and determines to what extent, and for what acts of carelessness, negligence or mismanagement, done upon or near their premises, they are responsible to strangers.

The leading cases on this subject are *Stone* v. *Cartwright*, 6 T. R. 411. *Bush* v. *Steinman*, 1 Bos. & Pul. 404. *Lonsdale* v. *Littledale*, 2 H. B. 267. These cases are reviewed and commented upon, and their true effect and bearing stated, in *Laugher* v. *Pointer*, 5 Barn. & Cres. 547, in which the judges of the court of king's bench were equally divided upon the circumstances of that particular case, which turned upon the liability of the owner of a coach.

The general principle to be extracted from the cases, in re-

gard to the use of real property, is, that the owner of real estate, either absolutely or for the time being ; he who has the management and control, and takes the benefit and profit of the estate ; he at whose expense and on whose account the business is conducted ; shall be responsible to third persons for the care lessness, negligence or want of skill of those who are carrying on and conducting the business, by which they are damnified ; and this, whether the persons, thus employed and engaged, are working on wages or by contract ; and whether they are employed directly by the principal, or by a steward, agent or manager having the superintendence of his estate. Several principles of law seem to be referred to, as the source of this respon sibility. One is, that he who does an act by another does it himself. Though not the work of his hands, it is the result of his will. His mind, his intent and his purposes are the effi cient cause of the operations conducted by others. It is therefore he, who, in the conduct of his own business, causes the damage complained of, and it is of him that redress shall be ob tained.

Another well known principle is, that every one shall so use his own property, as not, in the management of it, to hurt that of another. Having the power to determine what agents shall be employed, what business shall be carried on, upon the estate of which he has either the ownership or the enjoyment and possession, it is alike the dictate of justice and public policy, that he shall be responsible for the conduct of those whom he may employ or dismiss, and whose movements he has the power to direct.

These principles seem to be recognized in all the cases cited. *Stone* v. *Cartwright* was an action against one who had been appointed by the court of chancery guardian of a minor. The action was for injury to the premises of the plaintiff, from working a colliery of the minor, under the general superintendence of the defendant. Lord Kenyon, after stating that the action would not lie, says, " I have ever understood that the action must either be brought against the hand committing the injury, or against the owner, for whom the act was done "; adding, " the

present defendant has no interest in the colliery, nor was it worked for his benefit." In *Lonsdale* v. *Littledale*, the judgment may be gathered from the record; the reasons are not stated. *Bush* v. *Steinman* was a very peculiar case, and much discussed. The defendant had purchased a house near a road, and contracted with a surveyor to repair it for a stipulated sum. He employed a carpenter, the carpenter a bricklayer, and the latter a lime-burner; and the act, which caused the injury to the plaintiff, was done by the lime-burner's servant, in laying a heap of lime in the road. At the trial, Eyre, C. J. thought the relation was too remote, and that the action would not lie. But after a full argument, he concurred with the other judges in the contrary opinion. The ground he put it upon was this :. Here, he says, the defendant, by a contractor and by agents under him, was repairing his house; the repairs were done at his expense, and the repairing was his act. Heath, J. founded his opinion upon the single point, that all the sub-contracting parties were in the employ of the defendant; and Rooke, J. states the general proposition, that he who has work going on for his benefit, and on his own premises, must be *civilly* answerable for the acts of those whom he employs. And in the later case of *Laugher* v. *Pointer*, though the judges differed upon the facts of that case, (which was an action against the owner of a coach, drawn by the horses, and driven by a man employed by the owner of the horses,) they all agreed in the principle as to the owner of real estate. It is not only the owner of a farm or a mine, but an owner, on whose account and by whose funds it is carried on, by himself or others for him, who is responsible; and because these acts are his acts. It is put upon the ground that the acts were upon or in respect of the property of the defendants, of which they were in possession at the time. The judges, who thought the owner of the coach was not responsible, distinguished that from the case of the owner of real estate, because if one have the control and management of all that belongs to his house or land, it is his fault if he do not so exercise his authority as to prevent injury to another.

From this view of the law, it is manifest that we are not mere-

ly to inquire who is the general owner of the estate, in ascertaining who is responsible for acts done upon it injurious to another, but who has the efficient control ; for whose account, at whose expense, under whose orders, is the business carried on, the conduct of which has occasioned the injury.

The case of *Leslie v. Pounds*, 4 Taunt. 649, is strongly in confirmation of the same general doctrine. For though the general owner was held liable whilst the estate was under lease to a tenant, yet it was not upon the ground that he was the general owner, but because he had taken upon himself to make repairs, and had the actual care and management of the house ; the tenant having moved out whilst the house was under repair.

In applying these principles to the present case, the court are of opinion, that Hall & Gilbert did not stand in the relation of superior and subordinate, or employer and person employed. In May, 1836, they entered into a contract under seal, by which Hall covenanted to convey the land to Gilbert, and Gilbert covenanted to build a brick house upon the land ; the house to be completed and the money paid by the 1st of October following. Each party stipulated to do every thing proper on his part to be done, to carry this agreement into effect. The actual and exclusive possession of the land, being absolutely necessary to the building of the house, it was a stipulation that Gilbert should have such an exclusive possession, and superseded all power and control of the owner over it, for the time being, as effectually as a formal lease for years. But it was contended that this agreement stipulated for the completion of the house and the payment of the money, by the 1st of October, and that the right of possession terminated at that time. But as time is not of the essence of a contract of this nature, if the parties mutually acquiesced in the extension of the time, there would be good ground to hold that the contract was still in force ; at least the right of possession, on the part of Gilbert, would continue until the owner thought fit to enter ; which he never did. But it does not stand merely on this ground. By an indorsement signed by Hall, the contract, so far as required for building the house by the 1st of October, was continued in force one month ; and by a second

indorsement, it was further continued till January 20th, which fully covers the time, at which the alleged act was done, of which the plaintiff complains. There are also receipts of bank shares, indorsed after October 1st, as received on account of the purchase money. These receipts of bank shares, compared in date with the mortgage to Messrs. Guild & Savage, were probably the proceeds of the loan thereby obtained. On the 1st of February following, a settlement was made, by which the purchase money for this lot was included in an account then stated. From these circumstances, it is manifest that this contract was continued in force till after the time of the alleged trespass. It was, however, contended by the counsel for the plaintiff, that by the terms of these indorsements, the contract was continued in force only as it respected the time for building the house, and not for the payment of the purchase money for the land. But it was as incident to the building of the house, that the exclusive possession and control of the land was necessary, and of course such possession and control were continued.

Further ; Gilbert could in no sense be considered as building this house on account of Hall ; but on his own account. He was building it on land of which Hall at the time held the fee, as security for the purchase money of the land ; but he had a covenant for a conveyance, which might be specifically enforced ; and when performed, the building would enure wholly to his benefit. That the parties so understood it, is manifest from an express though unnecessary stipulation in the agreement itself, that an application might be made to a court of chancery for a specific performance of the contract. If the building should in any event enure to the benefit of Hall, as owner of the land, it would be by a breach, and not under a performance of the contract. The understanding and agreement of the parties were, that Gilbert should build on his own account ; and the law would imply no promise on the part of Hall to pay for such building, against the express agreement of the parties. In ascertaining the rights and obligations of the parties, we must presume that they looked to the performance, and not to the violation of their agreement. It seems therefore very clear, that for the work thus done, in

building the house, Gilbert could have had no right of action against Hall as upon a *quantum meruit*, nor could the persons working under Gilbert have had any claim for their services on Hall, as employer, or owner of the land.

We consider, therefore, that the work, of the careless and unskilful doing of which the plaintiff complains, was not work done by the defendant, or by his order or direction, or at his expense, or for his benefit ; and though done on land of which he was the general owner, it was not land of which he at the time had the possession or control, nor by persons appointed and employed by him ; and therefore he was not responsible to the plaintiff for the manner in which it was done ; and that this action cannot be maintained.

As this question depends upon the contracts of the parties, and a few facts, of which there was no dispute at the trial, we think it was the intention of the learned judge who tried the cause, as apparent in the report, to withdraw the question of the relation of the parties from the consideration of the jury, and reserve it as a question of law for the whole court ; and that his opinion was *pro forma* only, with a view of submitting the question of damages to the jury. Upon the view we have taken of the law, it has become unnecessary to express any opinion on the motion for a new trial on the ground of excessive damages.

*Verdict set aside, and a new trial granted.*