STATE, Respondent, vs. CARROLL, Appellant.

*January 15—February 10, 1942.*

For the appellant there was a brief by *Sanborn, Blake & Aberg* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. W. J. P. Aberg* and *Mr. Conrad.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Clarence V. Olson,* district attorney of Ashland county, and oral argument by *Mr. Platz.*

FRITZ, J.   The prosecutions which resulted in the judgment under review are the culmination of an unfortunate controversy between the defendant, J. H. Carroll, and Henry Kehring and his wife, Hattie Kehring, in relation to their occupancy of a dwelling house which is located on a forty-two and six-tenths-acre tract at Glidden, Wisconsin, and was owned and occupied for many years by the Kehrings.   In 1937 forty acres of that tract were conveyed to Carroll by a tax deed, and he believed that the house and other farm buildings were on the forty acres.   Kehring claimed that part of the house extended beyond the north boundary of the forty

acres onto the two and six-tenths acres which he continued to own. Because of that claim a dispute arose between the parties and the Kehrings had been refusing for three years to vacate the house, or else to purchase the forty acres from Carroll by reimbursing him for his expenditures since 1930 for the tax deed, tax certificates, and taxes. In May, 1938, the Kehrings went to Upson, Wisconsin, where Kehring was temporarily employed. When they returned to Glidden they found padlocks on the entrance door of the house, and Carroll told them that they could not enter, but their attorney removed the padlocks, and they moved in without Carroll's knowledge or consent. In December, 1939, Kehring obtained temporary employment at La Crosse and took his wife and daughter along, but left some of his furniture and personal property in the house, which he arranged to have occupied by Mrs. Eineichner during his absence. Carroll notified her to pay rent to him and he moved and placed part of Kehring's furniture and personal property in a warehouse at Glidden. Mrs. Eineicher paid rent for only one month to Carroll, and on May 29, 1940, he gave her notice to pay or to vacate the house. Pursuant to this notice, she moved out and Carroll locked the door and took off the knob. On June 3, 1940, the Kehrings returned from La Crosse and again occupied the house. They were in peaceable possession thereof on June 15, 1940, when Carroll entered the house through the only outside entrance door, which, as was determined by a survey made subsequently, was entirely on his forty acres. He walked through a hall to a dining room and saw Mrs. Kehring in a bedroom, which was off the dining room. The bedroom was in the northwest corner of the house and partly to the north of the boundary line between the forty acres to the south, and the two and six-tenths acres to the north thereof. Upon seeing Mrs. Kehring, Carroll said, "I moved you out a couple of times, what are you doing in here now?" She replied, "We think we own some of this." He then ordered her out and upon her refusal

he,—according to her testimony,—took a rocking chair, two kitchen chairs, a magazine stand, and some dishes and threw them out into the front yard, and then came back and grabbed her by one arm and jerked and pulled her out of the bedroom and across the dining room until she got hold of a door casing to which she clung until her daughter entered the house and Carroll loosened his hold on her arm. The daughter ran to an uncle's house for help and, before she returned with him, Carroll jerked down a heating stove and put it out on the front porch, where a tussle ensued between him and the uncle. Mrs. Kehring testified that she was bruised so as to require medical attention. Carroll denies in his testimony that he committed an assault and battery on Mrs. Kehring by the use of more force than was reasonably necessary to eject her as a trespasser. He also denies that he removed any personal property in such manner as to wilfully, maliciously, or wantonly injure or destroy it. Although there were conflicts in the evidence, it admits of the findings and conclusion stated by the court in its decision, which, in so far as here material, is as follows:

"I am satisfied from all the credible evidence that the defendant entered the house and committed an assault and battery on Mrs. Kehring. He grabbed her by the arm and left marks on her arm, and she went to a doctor for medical attention. . . . I am also satisfied from the testimony that the assault took place in the portion of the house on the Kehring side of the line, and also in the portion of the house on the Carroll side of the line. I am of the opinion that the defendant used more force than was necessary under the circumstances, and for that reason is guilty of the offense charged in count one of the information or complaint. . . . It is evident that he did not know where the line ran through the premises at the time the assault was committed for the reason he caused a survey to be made some months after this to determine where the line did run. Regarding the charge in the second count . . . I am of the opinion that, according to the

evidence, he is guilty. It is true that the damage inflicted on the furniture was of a minor nature, but it doesn't seem to me that under the circumstances he was justified in removing or throwing the furniture out of the building in question. If he wanted this furniture removed he should have proceeded in a legal manner. It is apparent from the testimony that at the time the defendant threw out the furniture and committed an assault he was angry and evidently lost his temper. He was not justified in either committing the assault or throwing out the furniture in the manner in which he did, and I am of the opinion that he is guilty on both counts."

In view of the fact found by the court that Carroll used more force than was necessary under the circumstances, his contention on this appeal that he was not guilty of assault and battery under sec. 340.57, Stats., because he had a right to use a reasonable amount of force to eject Mrs. Kehring as a trespasser could not be sustained. However, even if the Kehrings' re-entry on June 3, 1940, constituted a trespass, she clearly was in peaceable possession on June 15, 1940, when Carroll attempted to forcibly eject her. Consequently, there is applicable to his conduct the rule that where one who is not in the actual possession of land, although lawfully entitled thereto, forcibly ejects another who is in peaceable possession thereof, he is criminally liable for the assault. 4 Am. Jur. p. 170, § 80. As the court said in *Hickey v. United States* (9th Cir.), 168 Fed. 536, 537, 22 L. R. A. (N. S.) 728, in sustaining a conviction for assault and battery committed by the defendant in attempting to remove persons from his mining claim, after he had applied previously, but without avail, to the district attorney's office for assistance to have them removed,—

"There was manifestly a dispute between the parties about the right of possession as it respects the claim, and the defendant had no right to attempt to settle that dispute by undertaking to eject Powell and his men by physical force, after they had refused to vacate the premises, when so ordered.

Even if the defendant were the owner, with a perfect title, he had no legal right to oust trespassers in that way. The law provides peaceable methods for obtaining possession where wrongfully denied, and a resort to force and violence, without pursuing the due course of law, is seldom excused. . . . There is no warrant of law for such a course of action. It would lead to riot and bloodshed, and make every man the judge of his own property rights and the executioner of his own judgments. A person has a right to defend his domicile or habitation against the intrusion of others, and to apply ample force to remove any such found therein. *Long v. People,* 102 Ill. 331. And he may prevent trespass upon his lands by force sufficient to repel the same; but, being himself dispossessed, he has no right to recover possession by force and by a breach of the peace. *Sampson v. Henry,* 11 Pick. (Mass.) 379, 387. The law applicable here is pertinently stated by Pollock, J., in *State v. Bradbury,* 67 Kan. 808, 809, 74 Pac. 231, 232. He says: 'While one rightfully in possession of property may defend his possession against an attack, and while one lawfully entitled to the possession of real property may, if he can, enter and take peaceable possession, yet, no matter what lawful right to possession one out of the actual possession of real property may have, he will not be justified in making a forcible entry and committing a breach of the peace in ejecting by force an actual occupant.' "

The rule which was thus applied is in accord with the inhibition in sec. 291.03, Stats., that where entry into real property is given by law, such entry shall not be "with strong hand nor with a multiple of people, but only in a peaceable manner." And in that connection there is provided in this section the remedy that—

"Any person who shall make such unlawful or forcible entry and detain the same, or who, having peaceably entered upon any property, forcibly holds the possession thereof, may be removed therefrom and fined in the manner provided in this chapter."

These provisions are in accord with the public policy which is the basis likewise of the rule that the owner of personal

property which is in the peaceable possession of another has no right to retake the property by force. As the law provides ample redress for the recovery of the possession of property, whether real or personal, and for the recovery of damages for injury sustained by the unlawful withholding of such possession by another, the owner who is not in possession, although lawfully entitled thereto, has no right to attempt to take possession by force; and the law will not justify his resorting to violence and the breach of the public peace in attempting to do so. "Any other rule would substitute the strong arm for the court of justice, and promote lawbreaking and violence." *Monson v. Lewis,* 123 Wis. 583, 585, 101 N. W. 1094; *Barnes v. Martin,* 15 Wis. *240. See also Restatement, Torts, Intentional Harms, § 89, and comment *a.*

Defendant contends that the conviction on the count that he wilfully, maliciously, and wantonly destroyed household furniture cannot be sustained because the state failed to prove that his conduct in this respect was malicious and wanton, as well as wilful, and also failed to prove that the property was destroyed. On the other hand, the state contends that in order to convict under sec. 343.44, Stats., it is not necessary to prove that the property was maliciously and wantonly, as well as wilfully, injured or destroyed; and that, moreover, no proof that the injury or destruction was malicious or wanton is required under the provision in sec. 343.44, Stats., which provides for the punishment of any person who "shall injure or destroy any personal property of another." Some basis for the latter of these contentions is afforded by the fact that in the provision in sec. 343.44, Stats., which provides for the punishment of any person who "shall injure or destroy any personal property of another" the words "maliciously or wantonly" are not used at all, although they are used and expressly repeated in the preceding provisions in the section, which provide for the punishment of "any person who shall wilfully, maliciously or wantonly destroy, remove, throw down or in-

jure any fence, hedge or wall," etc.; "or who shall wilfully, maliciously or wantonly cut down, root up, injure, destroy or remove or carry away" any tree or shrub, etc. Because the words "maliciously or wantonly" are not used or repeated again in immediate connection with the final provision in sec. 343.44, Stats., for the punishment of any person who "shall injure or destroy any personal property of another" there is applicable the state's argument that since the legislature industriously inserted the words "wilfully, maliciously or wantonly" in the first two clauses of the statute, the omission of these words in the third clause must have been intentional and should be given effect under the rule that qualifying or limiting words or clauses are to be referred to but the next preceding antecedent unless the context or evident meaning of the enactment requires a different construction. *Dagan v. State,* 162 Wis. 353, 354, 156 N. W. 153. However, even if the words "wilfully, maliciously or wantonly" are considered to be also applicable to the offense committed by any person who "shall injure or destroy any personal property of another," it does not follow that the injury or destruction must be proven to have been also malicious and wanton, as well as wilful, in order to establish guilt. The adverbs "wilfully," "maliciously," and "wantonly" are used in the disjunctive in the two places where they appear in sec. 343.44, Stats. Consequently, neither malice nor wantonness is an essential element that must be proven in addition to wilfulness in order to sustain a conviction. In other words, if the defendant wilfully injured or destroyed any of the personal property, the court was warranted in convicting him on that charge regardless of whether he acted also maliciously or wantonly, or under a claim of right in throwing the property out of the house; and as the evidence admitted finding beyond any reasonable doubt that he did so wilfully and not merely negligently, and that as a result thereof a chair, maga-

zine stand, and some glassware were injured, the conviction must be sustained.

The facts that the complaint charged Carroll did "destroy and remove" personal property, without expressly stating also that he injured the property, and that, on the other hand, the proof does not establish that the property was destroyed, although it does sustain the court's finding that the property was injured, does not result in such a variance between the facts alleged and the facts proven as to render the conviction unwarranted because of a failure of proof. The charge that defendant did "destroy" the property obviously includes charging it was injured by him, and was therefore adequate to apprise him that injury thereto was charged. Moreover, there was no showing or contention on the trial that he was misled in that respect. If there had been then any such contention, the allowance of an amendment of the complaint so as to also expressly charge injury would have been warranted under the provision in sec. 357.16, Stats., which authorizes such an amendment "in all cases where the variance between the complaint, indictment or information and the proof is not material to the merits of the case." Under the circumstances the complaint can be considered amended to conform to the proof. *Anderson v. State,* 221 Wis. 78, 85, 265 N. W. 210.

*By the Court.*—Judgment affirmed.