COWARD ET AL., APPELLEES, *v.* FLEMING, APPELLANT.

(No. 7387—Decided April 2, 1951.)

*Mr. Vincent Aug* and *Mr. James L. Elder,* for appellees.

*Messrs. Gorman, Silversteen & Davis* and *Mr. David Howe,* for appellant.

MATTHEWS, J. The plaintiffs and defendant owned adjacent lots with buildings thereon both fronting

on West Seventh street in the city of Cincinnati, Ohio. The defendant's title was subject to a lease for five years, beginning on the first day of May 1945 and ending on the first day of May 1950, to Mary Williams who was placed in possession and continued in possession during all the time in which the events giving rise to this controversy occurred. The rental was $50 per month, with a privilege of purchase for $6,000, upon the exercise of which the monthly payments were to be applied upon the purchase price. The lease contained the standard provision that upon default for 30 days in payment of rent it should be lawful for the lessor to re-enter and enjoy the premises as in her former estate.

The lessee defaulted in the payment of rent in February 1948, but the defendant did not exercise her right to re-enter and enjoy the premises and the lessee continued in uninterrupted possession.

Sometime in the spring of 1947, the lessee obtained a city permit to dig a trench on the leased property. Through either agents or independent contractors she caused this trench to be dug and left it open until May 1948 at which time the foundation wall, sidewalk, and sewer on plaintiffs' adjoining property slipped and buckled, causing the damage that gave rise to this action.

The defendant had nothing to do with securing the permit or in the planning or digging of the trench. The lessee was not in default at the time the trench was dug, but became in default before the plaintiffs' wall, sidewalk, and sewer were damaged.

While there is some slight evidence that the excavation was more than nine feet below the curb in the alley to the rear of the lots, there is no evidence that it extended to that depth below the curb of Seventh street upon which the lots fronted, nor is there any

evidence that the excavation extended below the foundation of the plaintiffs' building.

There is no evidence as to the mode or manner of the digging of the excavation and consequent removal of lateral support. *Non constat* that the removal was not executed in a careful manner. The evidence is clear that after its removal, the plaintiffs' wall, sidewalk, and sewer were left without any support for several months during which they were weakened by rain and exposure to the weather. Finally the wall buckled and collapsed and the sewer was so damaged as to allow sewage to escape. While this was taking place neither party did anything to arrest the process. There is, therefore, no evidence of negligence unless the failure to do something to supply a substitute for the support that had been removed constituted negligence. The cases hold that an owner, free of negligence in removing the support, owes no duty to protect adjoining buildings by underpinning or shoring. *Taylor* v. *Day*, 6 N. P., 447, 449, 9 O. D., 486; 1 American Jurisprudence, 522, Section 27.

There is no evidence that defendant was aware at any time prior to the damage to the plaintiffs' property that her lessee had committed any negligent act creating a condition on the leased premises which was likely to cause damage to plaintiffs' property unless some action was taken to avoid it.

There is evidence that the defendant, by notice and finally by court action, sought to recover possession and succeeded, after this damage was done, in securing a judgment restoring possession of the premises to her.

The evidence shows that the plaintiffs at all times lived in the menaced property and were thoroughly familiar with the work defendant's lessee was doing.

In submitting this case to the jury, the trial court charged:

"Now there are three issues in this case which you must resolve in favor of the plaintiffs in order to permit them to be entitled to a verdict at your hands. These are, first, did the defendant have notice of the excavation which was made in the property owned by her and leased by a lease with privilege of purchase to one Mary Williams? The burden is upon the plaintiffs to prove by a preponderance of the evidence that the defendant did have such notice, and you will, if you find that the plaintiffs have sustained that burden, your verdict must be for the defendant. [We presume that the word, "not," was inadvertently omitted from the preceding sentence by the court reporter.]

"If you find on the other hand by a preponderance of the evidence that the defendant had such notice you will pass to the second of these essential issues, namely, was the defendant entitled to possession of the property, at or prior to the time the excavation was made? I say to you that Mary Williams was in actual possession from May 1st, 1945, until March 23rd, 1949, which period included the time of the making of the excavation and of the suffering of the alleged damage. The issue presented in this case is not who was in actual possession, but who was entitled to possession. In determining whether the defendant was entitled to possession, you may consider the terms of the lease itself which lease has been received in evidence and will accompany you to the jury room and you may consider the evidence submitted tending to show a breach of the lease by the terms of the lease by its terms by the lessee, Mary Williams. If you find that the plaintiffs have failed to show by a preponderance that there had been such a breach on the part of the lessee that the defendant was entitled to possession, then your verdict must again be for the defendant. If, on the other hand you find the plaintiffs have proved

by a preponderance of the evidence that the defendant was entitled to possession at the time of the excavation and damage, you will pass to a consideration of the third issue, namely, was the work done in making the excavation, done in a negligent manner. In that connection I say to you that there is no liability imposed unless this excavation was made in a negligent manner and again you must find such negligence by a preponderance of the evidence. Negligence as here used means a want of ordinary care or a failure to use such precautions and methods as would have been used by an ordinarily prudent person under the circumstances. If you find that the plaintiffs failed to sustain the burden of proving such negligence by a preponderance, I again say to you that your verdict must be for the defendant.''

This charge was followed by an instruction that if the jury found all three issues for the plaintiffs, they were entitled to recover the proven damage.

It will be observed that the court instructed the jury, without qualification, that if the defendant knew that the excavation was being made and had the right to possession at the time, and the excavation was made negligently, then she would be liable. There was no qualification that unless defendant knew the work was being done negligently she would not be liable, or that, knowing of such negligent work, she would not be liable if she exercised reasonable effort to resume possession so as to correct the condition caused by her lessee's negligence. In fact defendant's liability was made to depend solely on proof of the lessee's default in her duty to the plaintiffs to exercise ordinary care and her default in her duty to the defendant to pay rent, thereby giving to defendant the right to re-enter and repossess the premises.

There is no doubt that the court properly omitted

all reference to Sections 3782 and 3783, General Code, prescribing liability for excavating below adjacent foundation walls and nine feet below the curb level, and very properly made liability depend on negligence. Assuming that the lessee was negligent in some man ner (which we do not find), the question is whether the defendant lessor, under the circumstances, is liable for the resulting damage.

Plaintiffs' counsel rely on several cases from this and other states, of which *Shindelbeck* v. *Moon*, 32 Ohio St., 264, and *Stackhouse* v. *Close*, 83 Ohio St., 339, 94 N. E., 746, are typical. In the first-named case the question decided by the Supreme Court was that the petition did not state a cause of action.

In the petition there the plaintiffs alleged, as stated by the Supreme Court:

"Moon was the owner of certain property * * * which he had leased to Brooks, who was in possession of and using the same for a post office. A pipe or gutter attached to the building had become obstructed or stopped up, and the water, instead of running through it, flowed over the roof. This water, falling upon the steps of the post office, in winter, ice was formed. Coming from the post office, plaintiff stepped upon this ice, fell, and was hurt."

All the court decided was that the petition did not state a cause of action against the landlord. That is not a holding that the landlord is liable under any circumstances and certainly not a holding that a landlord out of possession is liable for negligence of his tenant during the term, where the tenant happens to be in default in the performance of some covenant giving the landlord the right, but not the duty, to reenter and repossess the premises. In the second-named case (*Stackhouse* v. *Close*), the landlord was held liable because he had reserved in the lease the

right to direct and supervise alterations and had exercised that right and the alterations so made were dangerous, and, as a result, plaintiff was injured. The defendant was an active participant in the planning and execution of the alterations.

In the instant case, plaintiffs' counsel rely, however, on statements made in those cases that the nonliability of the landlord results from the fact that he is out of possession and control, and, they contend that, therefore, if he has a right of re-entry such right gives him control and is sufficient to fix liability upon him. It seems to us that what was said in those cases, as in all other cases, must be construed in the light of the facts and what was actually decided. In none of the cases was the question presented that we are called upon to decide in this case, which is, whether a mere right of entry, without either actual or constructive entry, is sufficient to charge the landlord as though he were in actual possession or control.

To decide this case in favor of the plaintiffs, we must be prepared to hold that upon breach of any covenant of a lease by a tenant entitling the lessor to re-enter, he becomes liable to third persons, without any affirmative act on his part whatever, for any excavation upon the premises which may have been made by the tenant and liable for any damage resulting thereafter from the negligence of the tenant, provided only that he has knowledge of the excavation. In this lease there are at least eight covenants, the violation of any one of which gives the lessor the right of re-entry. One of these covenants is against waste, so that if what the lessee has done constitutes waste and damage results to the adjacent owner, the lessor would instantly become liable for the act of the tenant without any opportunity to protect himself against such liability.

Most of the cases cited in plaintiffs' brief are found

in an annotation to *Zolezzi* v. *Bruce-Brown* (243 N. Y., 490, 154 N. E., 535), in 49 A. L. R., 1414. It will not be necessary to refer to each of those cases specifically. In the *Zolezzi case* the court held that the lessor was not liable notwithstanding he had made a new lease, because he lacked knowledge of the nuisance at the time the new lease was executed. In the cases in the annotation where the lessor was held liable it was because he had reserved control, or had actively participated in the creation or continuance of the condition during the lease, or after the expiration of the lease the nuisance had been allowed to exist while the premises were in the actual possession of the lessor or of the same or another tenant under a new lease.

In the case at bar we find no such situation. The lessor had nothing to do with the planning or creation of the nuisance. The excavation was solely the act of the lessee. It was her personal negligence, if any, that resulted in damage to the plaintiffs. The term of the lease was for five years. That period had not expired. True, the lessee was in default in monthly payments and defendant was given the right to re-enter and repossess, but she was not obliged to terminate the lease and she never did so. Whether she could do so in view of the provision giving the tenant the right to purchase and have the monthly payments applied on the purchase price we need not decide. In any event, the tenant, continuing in possession after default with consent of lessor, would be, at least, a tenant at will.

In *Wurm* v. *Allen Cadillac Co.*, 301 Mass., 413, 17 N. E. (2d), 305, the court held that under a tenancy at will, where the tenant is in exclusive possession, the landlord has no right of entry without the tenant's permission.

The decision in *Lee* v. *McLaughlin,* 86 Me., 410, 30 A., 65, 26 L. R. A., 197, as stated in the L. R. A. headnote, is:

"A landlord is not liable for the fall of snow from the roof of a building causing injury to persons in the street below where the building, including its exterior is subject to the control of a tenant, even if his tenancy is only at will."

A right of entry is not a warrant authorizing the landlord to take the law into his own hands by forcibly ejecting the tenant. The former must resort to his legal remedy to enforce the right and must comply with all the conditions precedent imposed by law.

In 22 American Jurisprudence, 910, Section 6, it is stated:

"This is the philosophy at the foundation of all these actions of forcible entry and detainer which are designed to compel the party out of possession to respect and resort to the law alone to obtain what he claims is his."

See, also, *State* v. *Carroll*, 239 Wis., 625, 2 N. W. (2d), 211, 141 A. L. R., 244, and the annotation in 141 A. L. R., 255.

Cases exactly analogous to the case at bar seem to be rare. We have been cited to none and have found only one that bears a strong resemblance. That is the case of *Earle* v. *Hall*, 43 Mass., 353, 22 P., 102, and even in that case the similarity to the leasehold character of the relation was not mentioned. It was therein held, as stated in the syllabus:

"The general owner of real estate is not answerable for acts of carelessness, negligence and mismanagement committed upon or near his premises, to the injury of others, if the conduct of the business, which causes the injury is not on his account, nor at his expense, nor under his orders or efficient control.

"Where A. agreed to convey land to B. and B. agreed to build a house thereon and pay for the land, and while the agreement was in force, B., in preparing to

build the house on his own sole account, by workmen employed by himself alone, undermined the wall of the adjoining house of C., whereby it was injured; it was held that A. was not answerable for this injury, although the title to the said land remained in him at the time when the injury was committed."

The restatement of the law on this subject is found in 4 Restatement of the Law of Torts, 293, Section 837, which we quote:

"A lessor of land is liable for an invasion of another's interest in the use and enjoyment of other land, occurring while the lessor continues as owner of the land, which is caused by an activity carried on upon the leased land while the lease continues, if the lessor would be liable under the rule stated in section 822 had the activity been carried on by him, and if

"(a) at the time when the lease was made, renewed or amended, the lessor consented to the carrying on of the activity, or knew that it would be carried on, and

"(b) the activity, as the lessor should have known, necessarily involved or was already causing such an invasion."

It will be noted in the rule as formulated the liability of the owner is made to depend on one of three affirmative acts, that is, leasing the land, renewing the lease or amending it, with the dangerous condition thereon under such circumstances as to charge him with knowledge that the activity or condition would cause harm.

The evidence herein falls short of placing the defendant in this category. There is nothing in the rule about a default by the lessee imposing a liability on the lessor.

In 4 Restatement of the Law of Torts, 296, the comment on Section 837 is as follows:

"The lessor's liability does not extend to activities

of the lessee which he neither consents to nor has reason to know are intended at the time he makes the lease. In respect to other activities of the lessee, the lessor has no duty to stop them, *nor is he bound to terminate the lease even though he has a power to do so."* (Italics supplied.)

There was no break in the continuity of this lease, and that fact distinguishes this case from those relied on by plaintiffs. By executing the only lease that existed between this defendant and Mary Williams and by delivering exclusive possession of the premises to her, responsibility for the condition of the premises was shifted from the defendant to the lessee, and the defendant never did any act indicating a resumption of responsibility.

On this subject of continuity of tenancy and its effect on the lessor's liability, it is said in 32 American Jurisprudence, 87, Section 72:

"The question as to the continuity of the tenancy has sometimes arisen in considering whether the landlord or the tenant is liable for a nuisance on the leased premises, which originated after the tenancy from year to year began, but from which no injury arose until another year or rent period had begun after the origin of such nuisance. The reason that the question is then important is that as a general rule, the landlord is liable for nuisance on the premises, existing at the time the term begins, while the tenant alone is liable for nuisances arising after his term begins. In this regard the view has been taken, especially where the tenancy arose out of an occupancy under a lease for an indefinite period, that the recurring periods are to be regarded as a single term, and that, therefore, the landlord does not by his mere failure to terminate the tenancy after the nuisance has arisen become liable to third persons injured thereby during a sub-

sequent period, on the ground that the nuisance existed prior to the demise of the premises."

This distinction between successive tenancies and one continuous tenancy is expressly recognized in some of the cases relied on by the plaintiffs. See *Corrigan* v. *Antupit,* 131 Conn., 71, 76, 37 A. (2d), 697, and *Burroughs* v. *Ben's Auto Park, Inc.,* 27 Cal. (2d), 449, 454, 164 P. (2d), 897.

A mere right of entry does not oust a tenant who is in actual possession and vest the landlord with possession and thereby charge the latter with the duties and responsibilities of one in actual possession.

For these reasons, we are of the opinion that the court erred in overruling the defendant's motion for an instructed verdict and for judgment notwithstanding the verdict.

The judgment is, therefore, reversed and final judgment entered for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and ROSS, JJ., concur in the syllabus, opinion, and judgment.