**STATE of Maine**

v.

**Timothy J. RONAN, Jr.**

Supreme Judicial Court of Maine.

Dec. 7, 1977.

Joseph M. Jabar, Dist. Atty., David Crook, Asst. Dist. Atty. (orally), Augusta, for plaintiff.

Wilk & Scott by Martin L. Wilk (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

WERNICK, Justice.

Having appealed to the Superior Court (Kennebec County) from judgments of convictions entered on the charges of three complaints in the District Court, Division of Southern Kennebec, defendant Timothy J. Ronan, Jr. was given a consolidated jury trial in the Superior Court. The charges against defendant were that on March 1, 1976 he had operated a motor vehicle recklessly (29 M.R.S.A. § 1311) and on two separate occasions that same day had committed an assault and battery upon Wayne McCamish, a police officer of the City of Augusta (17 M.R.S.A. § 201). The jury found defendant guilty of all three charges. Now before us, as consolidated, are defendant's appeals from each judgment of conviction.

We deny the appeal as to each judgment.

On the evidence the jury was entitled to find the following facts.

On March 1, 1976, at approximately 6:00 p.m., defendant was operating an automobile on Water Street in a commercial area of the City of Augusta. Three other persons were in the automobile. One was Debbie Maynard, a girlfriend of the defendant. Another was Michael Sawyer, defendant's close friend.

Augusta police officer Charles Winslow happened to be inside the Brass Key Restaurant located on Water Street. While he was drinking a cup of coffee, he heard a loud crash, felt the wooden structure of the building shake and saw the bumper of the automobile operated by defendant penetrate about a foot and a half through a corner wall of the building. Officer Winslow immediately ran outside, and there he heard the engine of the automobile racing and saw the defendant sitting behind the steering wheel trying to reverse the vehicle to extricate it from the wall of the building. Officer Winslow approached the vehicle, satisfied himself that no one was injured and told defendant to turn off the engine

and step out of the automobile. He then instructed defendant to go into the police cruiser and sit on the back seat. Winslow there joined defendant, asked him for his license and registration, and then informed defendant that he was under arrest for reckless driving.

In the meantime Winslow had radioed for assistance and Augusta police officers, Chauncy Lancaster and Wayne McCamish, responded to the call. Arriving at the scene, Lancaster began to direct traffic on Water Street, and McCamish undertook to help Winslow. Apparently unaware that defendant was under arrest, McCamish permitted defendant to emerge from the cruiser to discuss whether defendant had a preference as to a particular wrecking service to remove his vehicle. When Winslow told McCamish that defendant was under arrest, McCamish instructed defendant to re-enter the cruiser. Defendant refused, and a fist fight ensued between McCamish and defendant.

Eventually, defendant was taken to the police station and booked. While leaving the police station after having been admitted to bail, defendant slammed a door with great force, damaging its return mechanism. Frank Varney, an Augusta police officer, happened to be walking behind defendant and saw the incident. He immediately arrested defendant for the felony of having "willfully or maliciously" injured a public building (17 M.R.S.A. § 2351). Varney and defendant became involved in a scuffle. Varney radioed for help and officer McCamish responded. By the time McCamish arrived, Varney had virtually subdued defendant and was rebooking him. At some point thereafter defendant was asked to empty his coat pockets. He refused. Officer McCamish reached for defendant's coat and, again, a fight broke out between McCamish and defendant.

The two assault and battery charges arose from defendant's two fights with officer McCamish.[1]

---

1. No charge was brought against defendant in connection with his scuffle with officer Varney. The felony charge for which Varney had arrest-

In denying defendant's appeal, we have considered, and found unconvincing, all of defendant's arguments. The points hereinafter discussed warrant extended analysis.

### 1.

■ Defendant contends that his conviction of the "Water Street" assault and battery on officer McCamish must be reversed because the presiding Justice gave an erroneous instruction to the jury on the meaning of "committed in his presence" as the legal standard of the lawfulness, or unlawfulness, of officer Winslow's warrantless arrest of defendant for the misdemeanor of reckless driving. If erroneous, the instruction was prejudicial to defendant. It could have induced the jury to find a lawful arrest, and on this basis the jury could have concluded that if officer McCamish was the first to use force his conduct was not unlawful (warranting resistance by defendant) because it was necessary to maintain a lawful arrest. On the other hand, if the presiding Justice had instructed the jury in accordance with defendant's conception of "committed in his presence", he would have told the jury that Winslow's arrest of defendant was unlawful. Given such instruction, the jury might have acquitted defendant on the rationale that officer McCamish's initial use of force against the defendant was unlawful and defendant's resistance was lawful because it did not involve excessive force.

The critical portion of the instruction is:
". . . So here, if you believe the officer's statement, . . . to the effect that there was this crash and the bumper came through and then how you view the testimony concerning the condition and behavior, . . . you would be justified but not compelled . . . to say . . . whether . . . there was reckless operation as far as the officer was concerned, . . . committed in his presence."

---

ed defendant was dismissed in the District Court after a finding of no probable cause.

We interpret this instruction as telling the jury: (1) it is for you to say to what extent you will credit the testimony of officer Winslow as truly stating facts; and (2) should you find the facts to be as officer Winslow testified—that he saw the bumper of the vehicle come through the building wall of the Restaurant and immediately thereafter observed defendant sitting behind the steering wheel of the vehicle attempting, with the engine racing, to extricate the vehicle from the wall by backing it out—then, as the fact-finder, you are authorized to conclude that the perspective of the officer revealed reckless driving "committed in his presence."

In the instant circumstances this instruction was fundamentally correct even if not so artful and thorough as it might have been. In substance, the jury was told that they may find that a misdemeanor was committed in the presence of the officer notwithstanding that the officer may have failed to perceive through his own senses *all* of the facts constituting the crime, so long as the officer could reasonably infer the existence of such other facts from what he had personally perceived. The jury was thus told that they must first find the facts perceived by officer Winslow through his own senses, and thereafter, if the jury believed those facts to have been as officer Winslow testified, the jury should decide whether it was reasonable for officer Winslow to infer from such facts that defendant was recklessly operating a motor vehicle.

This approach is in accord with the view of "in his presence" expounded in *State v. Cowperthwaite*, Me., 354 A.2d 173 (1976). There, noting that:

".  .  .  the officers' factual observations did not include the actual physical sight of all the elements necessary to convict of the crime  .  .  ." (p. 177),

we nevertheless decided:

"In assessing whether the defendant was committing the offense of night hunting in their presence, the wardens not only could rely on the personal knowledge acquired through their senses, but also could take into consideration the reasonable inferences properly to be drawn from their visual observations." (p. 178)

Under *Cowperthwaite*, then, the critical question, here, is whether the presiding Justice erred in conceiving that on the evidence it was *a question of fact* whether it was reasonable to infer from the facts perceived by officer Winslow that defendant was driving recklessly. Defendant contends that the presiding Justice erred because *as a matter of law* such inference was not reasonable.

We agree with the presiding Justice that on the evidence, here, rational persons could disagree about the reasonableness of inferring from the facts perceived by officer Winslow that defendant was recklessly operating the vehicle in which officer Winslow saw him. That the vehicle had crashed through the wall of a restaurant located in a business area and defendant, uninjured, was continuing to race the engine in an effort to extricate it even though he was in a business area, could rationally support as reasonable an inference that these events were the culmination of a continuing sequence of driving which manifested utter disregard for the safety of others.

Since it was open to rational persons, acting reasonably, to find such inference a reasonable one, the issue was not settled as a matter of law, and the presiding Justice correctly treated it as a question of fact.

### 2.

Also unconvincing is defendant's argument that there was insufficient evidence to support the ultimate conviction of reckless driving.

A taxi driver, Robert Winner, testified that he was operating his cab, transporting a fare, in a northerly direction on Water Street and in a business area. He then saw the automobile, (shown by other evidence to have been) operated by defendant, pull out somewhat from the side. At that time, the vehicle was approximately 30 or 40 yards ahead of Winner, and it proceeded to move for a very brief time in a forward direction,

but not entirely in a straight line. The vehicle then ". . . made two swerves and hit the . . . Brass Key." Winner described the pattern of the "swerving" as approximating that which would result if the printed letter "M" were resting on its right side.

Officer McCamish testified that when he came in close contact with defendant to discuss with him whether he wanted a wrecker for his automobile, he detected a slight odor of alcohol on defendant's breath, and defendant "seemed confused and his speech was drawn out." After defendant told officer McCamish that he did not want a wrecker and would drive his own car out of the building, officer McCamish told defendant that he was "in no condition to drive his car."

Further, as bearing on whether or not defendant had sustained an injury in the crash which might have caused him to be dazed, one of the passengers in the automobile corroborated the police conclusion that defendant was not injured, by testifying that he saw no cuts, bruises or bumps on defendant's head. In addition, there was testimony that when a rescue vehicle came to the scene, defendant indicated he had no need for medical attention.

All of the foregoing evidence is sufficient to warrant a conclusion by a reasonable jury that prior to the crash defendant was in the condition above-described, and while in such condition he operated the motor vehicle in a business area of the City of Augusta in the erratic and dangerous course above depicted. To operate a vehicle in that manner is reckless. *State v. Ifill,* Me., 349 A.2d 176 (1975).

However, defendant argues that the effect of the aforesaid evidence was dissipated by the testimony of Michael Sawyer, as a witness offered by defendant, who was one of the passengers in the automobile. Sawyer testified that the erratic and dangerous course of the vehicle was caused by the defendant's girlfriend. Sawyer said that she had become upset when defendant did not take her directly to her home, and she suddenly grabbed the steering wheel and swung it. The vehicle swerved as it did partly because of her swinging the steering wheel and partly because of defendant's efforts to regain control.

Even with this purported explanatory evidence, the issue of defendant's guilt of reckless driving remained exclusively within the fact-finding province of the jury. The evidence showed that Michael Sawyer was a good friend of the defendant. Defendant did not produce his girlfriend as a witness to corroborate Sawyer's account of what had happened, and the record reveals no adequate explanation of her absence. Similarly, defendant also failed, unaccountably, to produce the other passenger in the automobile, one Edward Annis, also a good friend of the defendant, to corroborate Sawyer's testimony. In addition, nothing in the evidence indicates that Sawyer himself or any other of the passengers riding in the automobile had previously given the police any explanation—let alone the explanation offered by Sawyer on the witness stand—to exculpate defendant of matters which, unexplained, gave strong objective appearance of being reckless driving by the defendant.

It was thus for the jury, as fact-finder, to decide the credit, if any, it would give Sawyer's testimony. In view of the additional considerations that Sawyer's testimony as to the path followed by defendant's vehicle was contradicted by the taxi driver, Winner, and Sawyer's version of other incidents involving defendant was disputed in significant respects by police eye-witnesses, the jury had warrant to reject, as a fabrication, the entirety of Sawyer's testimony that defendant's girlfriend, not defendant, had caused the erratic course taken by the automobile.

There was sufficient evidentiary support for defendant's conviction of reckless driving.

3.

■ Defendant attacks the validity of his conviction of (the second) assault and battery upon officer McCamish at the police

station. Defendant contends that officer Varney's arrest of defendant at the police station was, as a warrantless arrest, unlawful because Varney lacked probable cause to make the arrest. Hence, defendant's argument continues, officer McCamish's resort to the use of force against defendant, to help effectuate this unlawful arrest, was itself unlawful and defendant was entitled to use reasonable force to resist.

As bearing on this issue, officer Varney testified that he observed defendant as he was leaving the police station, and he

". . . followed . . . [defendant] out of the station and watched him go out through the front door and on the way out [defendant] opened the door so hard that it broke the return mechanism for the door."

Defendant argues that even if the jury was entitled to believe this testimony that officer Varney saw defendant injure a public building, probable cause was nevertheless lacking *as a matter of law* as to the other essential element of the crime, that defendant caused the injury "willfully or maliciously."

Although there was testimony by officer Varney that defendant had struck officer McCamish before McCamish had done anything to assist Varney in maintaining Varney's custodial arrest of defendant, the instructions of the presiding Justice allowed the jury an option to find an assault and battery against McCamish even should the jury find that it was McCamish who first used force against defendant. If, then, defendant is correct that Varney's arrest of the defendant was unlawful because as a matter of law probable cause for the arrest was lacking, the instruction of the presiding Justice was prejudicial error.

We conclude that in the instant circumstances it cannot be said that *as a matter of law* probable cause was lacking for a warrantless arrest of defendant for "willfully or maliciously" injuring public property.

We are aware that in *Wing v. Wing,* 66 Me. 62, 64 (1876) this Court said:

"To constitute a 'malicious and willful' injury to a building, it is not enough that the injury was willful and intentional; . . . it must have been done out of cruelty, hostility or revenge."

It must be stressed, however, that in *Wing* this Court was concerned with a context in which "malicious" was an element *conjunctively* with "willfulness." Here, the pertinent statute makes "maliciously" an element *disjunctive* to "willfully."[2] When these concepts are used as *alternatives,* it is generally acknowledged that "willfully" signifies less than "maliciously." "Willfully" connotes only that the injury is actually intended, or is the result of conduct which, objectively evaluated, is fairly characterized as utterly heedless of consequences practically certain to result. The concept "maliciously" introduces the additional element of a subjective state of mind of actual illwill or evil motive, as exemplified by animosity, hostility or vengefulness toward the owner of the property. *People v. McCree,* 128 Cal.App.2d 196, 275 P.2d 95 (1954); *State v. Carroll,* 239 Wis. 625, 2 N.W.2d 211 (1942); *Commonwealth v. Byard,* 200 Mass. 175, 86 N.E. 285 (1908).

Since, here, it is requisite for a violation of 17 M.R.S.A. § 2351 *only* that the conduct of defendant be "willful"—in the sense either that defendant had actual intent to injure the building or, regardless of actual intent, acted toward the building in a manner which, objectively evaluated, manifested that defendant was heedless of the consequence practically certain to result that the building would be injured,—we conclude that in the totality of the instant circumstances rational persons could disagree as to whether officer Varney, as a rational police officer, had probable cause to believe that defendant had so acted. It cannot be said, therefore, that *as a matter of law* probable cause was lacking for officer Varney to make a warrantless arrest of defendant for having "willfully" injured public property.

2. 17 M.R.S.A. § 2351 states:
"Whoever *willfully or maliciously* destroys, injures or removes any public building . . .."

The entry is:

Appeal denied.

Judgments affirmed.

POMEROY, ARCHIBALD, GODFREY, JJ., and DUFRESNE, A. R. J., concurring.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.