[Cite as *Coontz v. Hoffman*, 2014-Ohio-274.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashley S. Coontz, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-367 |
| | | (C.P.C. No. 11CVC-09-11681) |
| Laura Hoffman et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 28, 2014

*Robert W. Kerpsack Co., L.P.A.,* and *Robert W. Kerpsack*, for appellant.

*Williams & Petro Co., L.L.C, Josh L. Schoenberger* and *Susan S. R. Petro*, for appellee Karlee Properties, LLC.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Ashley S. Coontz ("appellant"), appeals from an April 23, 2013 judgment of the Franklin County Court of Common Pleas granting defendant-appellee, Karlee Properties, LLC's ("appellee") motion for summary judgment, and an April 29, 2013 judgment of the Franklin County Court of Common Pleas denying appellant's motion for reconsideration. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellee is the owner/lessor of a residential duplex located at 236 Barthman Avenue in Columbus, Ohio. On December 1, 2010, Jessica Knight and Michelle

Gilgien entered into a written lease agreement with appellant with respect to one of the two units in the duplex. Donna Hansel leased the other unit in the duplex.

{¶ 3} Appellant, Gilgien's half-sister, moved in with Knight and Gilgien on or about March 1, 2011. When appellant moved in, three dogs lived at the residence, Marious, Buckeye and Candy. Laura Hoffman, a defendant in this action, owns all three dogs. According to appellant, the events that gave rise to this action are as follows:

> 2. On April 17, 2011, I was attacked and bitten by three dogs, a Bullmastiff/Rottweiler/Chow mix named "Marious" and a large mixed breed dog named "Buckeye," each of which were owned by Defendant Jessica Knight, and a Pittbull named "Candy," which was owned by Defendant Laura Hoffman. The attack occurred while my half-sister, Michelle Gilgien, and I were arguing in the living room of leased residential premises located at 236 Barthman Avenue, in Columbus, Ohio, where my mother and I had been living temporarily for the previous six (6) weeks or so. Michelle was angry with me for notifying Franklin County Department of Animal Care and Control earlier in the day that the dogs in question were dangerous and vicious. The argument was not, however, directed toward any of the dogs in question, nor did anyone tease, torment or provoke the dogs.

(Appellant's affidavit, ¶ 2.)

{¶ 4} On September 19, 2011, appellant filed a complaint in the Franklin County Court of Common Pleas against Hoffman, Knight and appellee, seeking damages. Ohio Department of Job and Family Services ("ODJFS") joined the action, as a statutory subrogee of appellant, in order to recover sums expended for appellant's medical treatment. Thereafter, appellee filed a third-party complaint against Gilgien.[1]

{¶ 5} Appellee filed a motion for summary judgment on February 21, 2013. On April 3, 2013, the trial court granted summary judgment in favor of appellee as to the claims of both appellant and ODJFS. Appellant filed a motion for reconsideration on April 9, 2013. The trial court denied appellant's motion on April 23, 2013.[2]

---

[1] On November 28, 2012, the trial court entered judgment by default against Gilgien as to the third-party complaint. The judgment is not the subject of this appeal.
[2] On April 23, 2013, the trial court also entered judgment against Knight and Hoffman. No appeal was taken from such judgment.

## II.  ASSIGNMENT OF ERROR

{¶ 6}   On May 1, 2013, appellant filed a notice of appeal to this court from the judgment entries issued by the trial court.  Appellant assigns the following error:

> THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT ASHLEY S. COONTZ IN ORDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEE KARLEE PROPERTIES, LLC ON THE ISSUE OF LIABILITY.

## III.  STANDARD OF REVIEW

{¶ 7}   Appellate review of summary judgment motion is de novo.  *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997).  "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."  *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).  We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds.  *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 8}   Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 9}   When seeking summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case.  *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence

allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the non-moving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

## III. LEGAL ANALYSIS

{¶ 10} A plaintiff who suffers injury as a result of a dog bite may, in the same case, pursue both a strict liability claim under R.C. 955.28, and common a law negligence claim. *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, ¶ 22. In a common law dog bite action, the plaintiff must prove: (1) the defendant owned or harbored the dog; (2) the dog was vicious; (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness. In an action for damages under R.C. 955.28, the plaintiff must prove: (1) ownership or keepership of the dog; (2) that the dog's actions were the proximate cause of the injury; and (3) the damages. *Id.*

{¶ 11} Although appellant's complaint alleges claims for relief against appellee under both statutory and common law, appellant has abandoned its statutory claim. Thus, the threshold question in this case is whether the evidence presented by appellant permits the inference, under the common law, that appellee "harbored" the dogs that attacked her. The trial court held that there was no such evidence. We agree.

{¶ 12} A dog owner "is the person to whom a dog belongs, while a keeper has physical control over the dog." *Samas v. Holliman*, 10th Dist. No. 02AP-947, 2003-Ohio-1647, ¶ 14, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 297 (8th Dist.1998), and *Flint v. Holbrook*, 80 Ohio App.3d 21, 25 (2d Dist.1992). A harborer, on the other hand, "is one who has *possession and control* of the premises where the dog lives, and silently acquiesces to the dog's presence." (Emphasis sic.) *Id.* In order to withstand appellee's motion for summary judgment as to her common law claim, appellant must produce evidence that appellee harbored the dogs with knowledge of their vicious tendencies. *Samas*, citing *Burgess*.

{¶ 13} The "PETS" clause in the lease prohibits Knight and Gilgien from keeping pets on the leased premises without the prior written consent of appellee, and the payment of a non-refundable security deposit of $50. (R. 5-6.) Even though Gilgien and

Knight have acknowledged that they brought the dogs with them when they moved into the apartment, the portion of the lease agreement where the parties are to specify the type and number of pets appellee permitted them to keep on the leased premises is left blank. A lease provision entitled "RIGHT OF ACCESS" states: "Management shall have the right of access to residence for inspection and repair or maintenance during reasonable hours. In case of emergency, Management may enter at any time to protect life and prevent damage to the property."

{¶ 14} It is well-settled law that a lease agreement transfers both occupation and control of the subject premises to the tenant. *Samas* at ¶ 14, citing *Burgess* at 297-98; *Flint* at 25. In the context of a landlord's liability for injuries on the leased premises, "[t]he hallmark of control is the ability to [admit] or to exclude others from the property." *Kovacks v. Lewis,* 5th Dist. No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 27, citing *Flint.*

{¶ 15} An overwhelming majority of courts of appeals in this state, including this district, have held that a landlord out of possession is not the harborer of a tenant's dog for purposes of dog bite liability. *See, e.g., Diaz v. Henderson,* 12th Dist. No. CA2011-09-182, 2012-Ohio-1898 (where tenant had sole control and possession of the property where her dog lived, and dog was kept in areas on the property that were neither common areas nor shared by the landlord, landlord did not harbor the dog that attacked plaintiff); *Kovacks* (landlords who had keys to leased premises where child was bitten by tenant's dog, but never let themselves in without first letting tenants know, did not have possession or control over the property and could not be held liable to plaintiff as a harborer of tenant's dog); *Young v. Robson Foods, Inc.,* 9th Dist. No. 08CA009499, 2009-Ohio-2781 (landlord who made monthly visits to inspect rental property but did not enter residence, was not a harborer of tenant's dog for purposes of liability for an attack upon plaintiff that occurred inside the home); *Jones v. Goodwin,* 1st Dist. No. C-050468, 2006-Ohio-1377 (where pitbull was not kept in shared area or in area over which landlords had possession and control, landlords were not harboring pitbull owned by tenant, and were not liable to victim for plaintiff's injuries); *Burrell v. Iwenofu,* 8th Dist. No. 81230, 2003-Ohio-1158 (landlord did not retain possession and control of backyard common area in which tenant was bitten by dog and could not be considered a harborer of the dog); *Hilty v. Topaz,* 10th Dist. No. 04AP-13, 2004-Ohio-4859 (even if the property

owner knew that tenants kept the dog that attacked plaintiff at the leased premises, the property owner is not a harborer of the tenant's dogs absent evidence that the owner had possession and control of the property); *Samas* (landlords could not be held liable to plaintiff as a harborer of the dog inasmuch as they had no control over the premises, there was no evidence that the dogs were vicious, and the tenant had told the landlords that the dogs would be leaving the premises soon); *Burgess* (landlord's knowledge about the existence of the dog does not make landlord a harborer for purposes of dog bite liability where the landlord did not acquiesce in tenant's decision to keep the dog in common areas or in an area shared by both the landlord and the tenant).

{¶ 16} In this case, the undisputed evidence establishes that Hoffman owned the dogs that attacked appellant; that Knight and Gilgien kept the dogs on the leased premises; and that the attack occurred inside the residence, not in a common area or in an area shared by the landlord and the tenant. Appellant argues, however, that under the rule of law set forth in *Hill v. Hughes,* 4th Dist. No. 06CA2917, 2007-Ohio-3885, an issue of fact exists whether appellee harbored the dogs. We disagree.

{¶ 17} In *Hill*, the tenant's dog attacked and injured plaintiff while plaintiff was playing with friends at the leased premises. The landlord in *Hill* was both the father and the employer of the tenant/dog owner, and he lived two doors down from his son. There was no written lease agreement. In the landlord's deposition, he testified that he had the right to tell his son whether he could keep a dog on the premises and to insist that his son immediately get rid of a dog that became threatening. *Id.* at 19. Based upon this testimony, a majority of the court held that an issue of fact existed whether the father was a harborer of the dog. *Id.* at 20.

{¶ 18} To the extent that *Hill* subjects a landlord to liability for an attack by the tenants' dog that occurred upon premises within the exclusive possession of the tenant, the *Hill* case conflicts with the established precedent in Ohio, including the law of this district. *See Samas*; *Hilty*.[3] Moreover, the *Hill* case is clearly distinguishable upon the facts. Unlike the family/employment relationship that existed between the landlord and

---

[3] In the dissenting opinion in *Hill*, Judge Kline stated "in my view, there is no evidence that [the landlord] maintained possession of the leased property. As such, [the landlord] cannot be held liable as a harborer * * * under common law, and therefore, summary judgment in his favor is proper."

tenant in *Hill,* appellee's legal relationship with Knight and Gilgien is purely that of landlord and tenant. There are no facts or circumstances in this case that would permit an inference that appellee had greater possession or control over the leased premises than that allowed under the lease agreement. Accordingly, *Hill* does not compel us to reverse the trial court's decision given the specific facts of this case.

{¶ 19} Appellant argues, in the alternative, that under a certain provision in the lease agreement, appellee retained sufficient possession and control of the leased premises to support a finding that appellee harbored the dogs.[4] Specifically, appellant points to a portion of the "RIGHT OF ACCESS" clause which permits appellee to enter the leased premises at any time "to protect life." Appellant maintains that this language in the lease imposed a duty upon appellee to immediately enter and remove vicious dogs upon learning that Knight and Gilgien were keeping them on the premises. We disagree.

{¶ 20} "Leases are contracts subject to the traditional rules of contract interpretation." *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.,* 8th Dist. No. 98986, 2013-Ohio-1800, ¶ 13, citing *Mark-It Place Foods v. New Plan Excel Realty Trust, Inc.,* 156 Ohio App.3d 65, 2004-Ohio-411, ¶ 29 (4th Dist.). The interpretation and construction of a written contract is a question of law and, therefore, appellate courts will review de novo the trial court's interpretation of a contract. *Id., citing Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501 (1996). The purpose of contract construction is to discover and effectuate the intent of the parties. *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9. If the terms of the contract are determined to be clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations. *Davis v. Loopco Industries, Inc.,* 66 Ohio St.3d 64 (1993).

{¶ 21} Upon review of the plain language of the "RIGHT OF ACCESS" clause, we conclude that the parties intended appellee to have immediate access to the leased premises only in cases of serious or life threatening maintenance or repair emergencies. Accordingly, even if we were to accept appellant's allegations that appellee knew Knight and Gilgien kept vicious dogs on the leased premises, the emergency clause did not give

---

[4] Appellant advanced this argument in her motion for reconsideration.

appellee the right to immediately enter upon the property and remove the dogs. In short, appellant ascribes a meaning to the emergency clause that is irreconcilable with any reasonable construction language used by the parties.

{¶ 22} Moreover, the "PETS" clause in the lease agreement, which speaks directly to this issue, permits appellee to dispose of unregistered or "nuisance" pets only "according to law." Appellant admits that she told an animal control officer that the dogs were vicious and that they attacked her own dog. (Coontz Deposition, 88-89.) Under Ohio law, appellee could not have done more than that. Indeed, in *Samas,* we held that the landlord owed no duty to the plaintiff to commence an eviction action against the owner of the dog that injured her even though the landlord had prior knowledge that the tenant was keeping a vicious dog on the premises, in violation of the lease agreement. *Id.* at ¶ 15.

{¶ 23} In short, the evidence submitted by appellee, including the written lease agreement, establishes the following: appellee transferred both possession and control of the leased premises to Knight and Gilgien; that Knight and Gilgien did not inform appellee that they intended to keep dogs on the leased premises; that the attack on appellant occurred on leased premises under the exclusive possession and control of Knight and Gilgien; that appellee had no right to admit or exclude anyone from the leased premises; that appellee had no right to remove the dogs from the leased premises; and that appellee had no duty to evict Gilgien and Knight. Appellant failed to produce any evidence, in opposition to appellee's motion for summary judgment, that would permit an inference that appellee retained possession and control of the premises where the dogs lived. *Id.* Accordingly, appellant failed to produce evidence that appellee "harbored" the dogs that attacked her.

{¶ 24} Appellant argues, however, that *Maggard v. Pemberton,* 2d Dist. No. 22595, 2008-Ohio-4735 stands for the proposition that a landlord out of possession may be held liable for injuries caused by a vicious dog owned and/or kept by the tenant where the evidence shows that the landlord has "knowledge of the dangerous or vicious animal but fails to abate the hazard with sufficient time to do so." *Id.* at ¶ 9, citing *Flint* at 26. To the extent that *Maggard* subjects a landlord to liability for an attack by a tenant's dog that occurs on premises under the exclusive possession and control of the tenant, *Maggard* is

clearly at odds with the established Ohio precedent discussed herein. Indeed, under Ohio law, a landlord's knowledge that the tenant is keeping a dog on the leased premises, standing alone, does not support a finding that the landlord harbored the dog absent evidence that the landlord has retained possession *and* control of the leased premises. *Samas; Hilty; see also Lopiccolo v. Vidal,* 8th Dist. No. 97150, 2012-Ohio-4048. Moreover, in *Maggard*, the evidence showed that the landlord and tenant were personal friends, and that he lived across the street from the tenant. The evidence also showed that the landlord knew the following: that the dog had previously bitted two other children on the property; that the local police had been called to the scene of the second incident; that police told him the dog was to be euthanized; and that the tenant had reneged on his promise to get rid of the dog after the second incident. Thus, the undisputed facts of the *Maggard* case are materially different from the undisputed facts in this case.

{¶ 25} Appellant claims, in her affidavit, that she overheard appellee's agent, Doug Justice, discussing the dogs with Gilgien when he came to collect the rent in April 2012. Appellant further avers that, she overheard Justice tell Gilgien that Donna Hansel complained to him about the pitbull named "Candy" in March 2012. While appellant insists that her affidavit creates a factual issue whether appellee knew that Knight and Gilgien kept vicious dogs at the leased premises, and whether appellee had sufficient time to remove the threat prior to the attack upon appellant, such factual issues are not material in absence of evidence that appellee harbored the dogs that attacked her. In other words, even if we accept appellant's affidavit as true, such evidence does not permit an inference that appellee harbored the dogs that attacked appellant.[5]

## IV. DISPOSITION

{¶ 26} Based upon the undisputed evidence submitted by appellee, and construing the remaining evidence in appellant's favor, appellee is entitled to judgment in its favor on appellant's common law negligence claim. Therefore, we hold that the trial court did not err in granting summary judgment in favor of appellee. Appellant's sole assignment of error is overruled. Having overruled appellant's sole assignment of error, we affirm the

---

[5] Given our determination regarding the first element of appellant's prima facie case, we need not address the question whether the averments in appellant's affidavit are inconsistent with her prior deposition testimony.

judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

————————————————