**FLINT, Appellant,**

v.

**HOLBROOK et al.; Patterson, Appellee.**

[Cite as *Flint v. Holbrook* (1992), 80 Ohio App.3d 21.]

Court of Appeals of Ohio,
Montgomery County.

No. 13053.

Decided May 11, 1992.

*John P. Tracy* and *Joseph K. Warden,* for appellant.

*Laurence A. Lasky,* for appellee.

BROGAN, Judge.

The appellant Lorraine Flint appeals from the judgment of the Montgomery County Court of Common Pleas granting summary judgment for appellee Turner B. Patterson.

This matter began when Lorraine Flint was bitten by a pit bull dog owned by Carl Holbrook. Flint brought suit against Holbrook and Turner Patterson, as the titled owner of the premises where the dog was kept. The trial court granted summary judgment for Patterson, finding that he did not retain the requisite control of either the premises or the dog as required for liability under either statutory or common law.

In this appeal, Flint contends that genuine issues of material fact exist as to whether Patterson was negligent in allowing Holbrook to keep the dog on the property.

Prior to the incident which generated this appeal, Patterson had rented the property located at 35 East Center Street to Holbrook. During their landlord-tenant relationship, Patterson was aware that Holbrook owned at least one pit bull dog, an animal classified under the Ohio Revised Code as a vicious animal. R.C. 955.11(A)(4)(a). On August 10, 1989, Holbrook purchased the property from Patterson by land installment contract. It is undisputed that Holbrook was delinquent in his monthly payments to Patterson on several occasions.

On or about June 24, 1990, Flint was bitten and injured by Holbrook's dog in the alley between her residence and Holbrook's. On September 24, 1990, Flint filed a complaint against both Holbrook and Patterson, alleging, *inter alia,* that Patterson was negligent in allowing Holbrook to keep and/or harbor a pit bull dog on the premises and in failing to properly restrain the dog. While both defendants filed timely answers, only Patterson filed a motion for summary judgment. The lower court sustained Patterson's motion on August 14, 1991 and Flint appealed on September 16, 1991. The lower court's judgment was certified to this court on April 22, 1992 pursuant to Civ.R. 54(B).

In her sole assignment of error, Flint contends that genuine issues of material fact exist as to whether Patterson was negligent in allowing Hol-

brook to keep the pit bull on the property, and as to whether he had control of the premises vis-a-vis his retention of the legal title to the property upon which Holbrook kept his dog.

Flint first asserts that Patterson owed her a duty of care relative to Holbrook's dog, comparing the relationship between Patterson and Holbrook to that of a landlord and a tenant.

In Ohio, a suit for damages resulting from dog bites can be instituted under both statute and common law. *Warner v. Wolfe* (1964), 176 Ohio St. 389, 393, 27 O.O.2d 356, 358, 199 N.E.2d 860, 862. R.C. 955.28 imposes strict liability upon the owner, keeper, or harborer of a dog "for any injury, death, or loss to person or property that is caused by the dog." While certain exceptions to this liability exist, they are not applicable to the case at bar.

The issues to be determined under the statute are the ownership or keepership of the dog, whether the dog's actions were the proximate cause of the damage, and the monetary amount of damages. *Hirschauer v. Davis* (1955), 163 Ohio St. 105, 109, 56 O.O. 169, 171, 126 N.E.2d 337, 340; *Blaisdell v. Baker* (May 16, 1991), Montgomery App. No. 89–706, unreported, 1991 WL 82953.

An owner is the person to whom a dog belongs, while a keeper has physical control over the dog. *Garrard v. McComas* (1982), 5 Ohio App.3d 179, 182, 5 OBR 363, 366, 450 N.E.2d 730, 733. "In determining whether a person is a 'harborer' * * * the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives." *Godsey v. Franz* (Mar. 13, 1992), Williams App. No. 91WM000008, unreported, 1992 WL 48532. Because a lease transfers both occupation and control of the premises to the tenant, a landlord's liability as a harborer for injuries inflicted by a tenant's dog would depend upon whether he permitted the tenant's dog in common areas. *Id.;* see, also, *Riley v. Cincinnati Metro. Hous. Auth.* (1973), 36 Ohio App.2d 44, 46, 65 O.O.2d 40, 41, 301 N.E.2d 884, 886. While a wife may be the harborer of a dog owned by her husband, this liability is based on her conduct in relation to the dog, not because of the relationship of husband and wife. *McIntosh v. Doddy* (1947), 81 Ohio App. 351, 359, 37 O.O. 203, 206, 77 N.E.2d 260, 264–265, appeal dismissed (1948), 149 Ohio St. 426, 37 O.O. 111, 79 N.E.2d 137. Thus, a harborer is one who has *possession and control* of the premises where the dog lives, and silently acquiesces to the dog's presence. *Sengel v. Maddox* (1945), 31 O.O. 201, 16 Ohio Supp. 137.

Under common law, a plaintiff suing for injuries inflicted by a dog must show that the defendant owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the

defendant was negligent in keeping the dog. *McIntosh v. Doddy, supra.* One can negligently keep and harbor a vicious dog without owning either the dog or the premises where the dog is kept. *Hayes v. Smith* (1900), 62 Ohio St. 161, 163, 56 N.E. 879, 882. Under common law, " * * * the gist of the action for injury by a dog known by its owner to be vicious is generally said to be not negligence in the manner of keeping the dog, but for keeping it at all." *Warner v. Wolfe, supra,* 176 Ohio St. at 392, 27 O.O.2d at 358, 199 N.E.2d at 862.

Landlords out of possession can be found liable for injuries caused by animals owned and kept on the leased premises by the tenant where the landlord has knowledge of the dangerous animal but fails to take any action to have the animal removed or confined. The Ohio Supreme Court stated that:

"When it has been shown that the animal has been kept after knowledge of its dangerous character has been acquired or circumstances from which the law would imply knowledge and an injury has followed, this would be prima facie evidence of negligence." *Hayes v. Smith, supra,* 62 Ohio St. at 182–183, 56 N.E. at 882; *Uccello v. Laudenslayer* (1975), 44 Cal.App.3d 504, 118 Cal.Rptr. 741 (landlord liable where he had knowledge of vicious dog and control of the property giving him power to remove it).

Thus, to find Patterson liable as a landlord as Flint contends he is, we must determine that he harbored the dog as required by R.C. 955.22 and/or that he harbored the dog with knowledge of its vicious tendencies under common law. In order to make this determination, we must find that Patterson controlled the premises, *i.e.,* that Patterson had the necessary power to admit and exclude people from the property. *Cooper v. Roose* (1949), 151 Ohio St. 316, 319, 39 O.O. 145, 147, 85 N.E.2d 545, 547.

In support of her argument that Patterson was liable because he owned the property, Flint relies on *Bundy v. Sky Meadows Trailer Park* (Oct. 23, 1989), Butler App. No. CA89–01–002, unreported, 1989 WL 125379, and *Heitman v. Sky Meadows Trailer Park* (Oct. 23, 1989), Butler App. No. CA89–05–067, unreported, 1989 WL 125381, where children were attacked and bitten in a trailer park by a dog owned by tenants of a trailer park. The dog had a history of roaming and biting children. The plaintiffs advanced claims of negligence and strict liability, asserting that the Sky Meadows Trailer Park had breached its duty to enforce its rule prohibiting animals from running at large. In reversing summary judgments in favor of the trailer park on the issue of negligence, the Butler County Court of Appeals distinguished trailer parks from apartment complexes, specifically noting that the common areas in trailer parks can be restricted by park rules, as can the conduct of residents.

The ability of the trailer park operator to control such activities creates a duty to enforce park rules and regulations, the court held, citing 1 Restatement of the Law 2d, Torts (1965) 122, Section 315. Therefore, Sky Meadows' knowledge of the dog's vicious propensities and its failure to enforce the rule prohibiting animals from running at large was a breach of duty.

The court upheld the summary judgments in favor of Sky Meadows as to the strict liability claim, because Sky Meadows did not have the possession and control of the premises occupied by the dog owner necessary to render it a keeper or harborer of the dog and because the failure to properly enforce park rules does not constitute harboring an animal, since the requisite mental intent is lacking. See, also, *Garrard, supra.*

The court affirmed the summary judgment as to the claim of strict liability because the defendant was neither the owner nor harborer of the dog.

 Flint's reliance on these cases is misplaced. First, the trailer park had certain rules and regulations that created a contractual duty in the landlord to prevent dogs from running at large. Second and most important, these two cases involved the relationship between a trailer park operator and its tenants, while the relationship between Holbrook and Patterson is that of vendor-vendee. Holbrook kept his dog on property he had purchased from Patterson by land installment contract. A "land installment contract" is defined under R.C. 5313.01 as:

" * * * an executory agreement * * * under which the vendor agrees to convey title in real property * * * to the vendee and the vendee agrees to pay the purchase price in installment payments, while the *vendor retains title to the property as security for the vendee's obligation.* * * * " (Emphasis added.)

While a conveyance by land installment contract transfers ownership of the property, the vendee holds equitable title while the vendor retains legal title. *Blue Ash Bldg. & Loan Co. v. Hahn* (1984), 20 Ohio App.3d 21, 26, 20 OBR 22, 27, 484 N.E.2d 186, 191. An "equitable owner" is defined as:

"One who is recognized in equity as the owner of property, because the real and beneficial use and title belong to him, although the bare legal title is vested in another * * *. One who has a present title in and which will ripen into legal ownership upon the performance of conditions subsequent. There may therefore be two 'owners' in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner." Black's Law Dictionary (6 Ed.1990) 1105.

The court in *Blue Ash* found persuasive the following comment on the rights of a vendee as in a land installment contract:

"The vendee obtains an equitable estate entitling him generally to all the incidents of ownership. The vendee has the right to use the property free from interference of the vendor and is not impeachable for waste unless the security of the vendor becomes impaired. His interest is alienable and is subject to taxation, and the debtor-vendee has no statutory right of redemption." *Blue Ash, supra,* 20 Ohio App.3d at 24, 20 OBR at 25, 484 N.E.2d at 189, citing Comparison of California Mortgages, Trust Deeds and Land Sale Contracts (1960), 7 U.C.L.A.L.Rev. 83, 96–97.

By keeping the legal title in trust for the purchaser, the vendor is considered to have a lien similar to a mortgage for the unpaid purchase price; the title is kept as security for the debt. 80 Ohio Jurisprudence 3d (1988) 196–197, Real Property Sales and Exchanges, Section 152. Furthermore, it is presumed that a vendor with such a lien retains the title, not the land, as security for payment of the price. *Id.* at 199, citing *Dayton Xenia & Belpre RR. Co. v. Lewton* (1870), 20 Ohio St. 401.

Conversely, a lease of realty conveys only a conditional estate in land for a term in consideration of rent. *Cuyahoga Metro. Hous. Auth. v. Watkins* (1984), 23 Ohio App.3d 20, 23, 491 N.E.2d 701, 705. This is not the scenario in the case at bar.

In this case, it is evident that the land contract agreement effectively transferred the ownership and equitable title to the property to Holbrook. Holbrook had exclusive possession and control of the premises upon which he kept his pit bull. While Patterson maintained the bare legal title as security for his debt, he exercised no control over the property; no clause affording him possession or control of the property was included in the land contract agreement. Essentially, Patterson simply financed the property for Holbrook. Therefore, Patterson cannot be found liable under either R.C. 955.22 or the common law as he was neither the keeper, owner or harborer of the dog which caused injury to Flint, and exercised no control over the premises upon which the dog was kept.

Flint also contends that because Patterson knew that Holbrook was keeping a vicious dog on the premises, he had a duty to foreclose on the property due to Holbrook's chronic delinquency in making payments, and that he should not now be able to shield himself from liability by falling back on the land contract, since there was noncompliance.

However, we find persuasive the finding of the Hamilton County Court of Appeals in *Coward v. Fleming* (1951), 89 Ohio App. 485, 492, 46 O.O. 289, 292, 102 N.E.2d 850, 854, wherein the court found that a lessor was not obligated

to terminate a lease agreement although the lessee was in default of the monthly payments.

For the aforementioned reasons, we overrule the appellant's assignment of error. The judgment of the Montgomery County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.