JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Tiisha Burrell ("Burrell"), a tenant, appeals the trial court granting a directed verdict in favor of defendant-appellee, Anthony Iwenofu ("landlord"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In October, 1999, a pit bull dog bit Burrell in the backyard of her apartment on West 17th St., Cleveland, Ohio. Burrell filed suit against her landlord and her co-tenant, Siciliano DeJesus. The case proceeded to a jury trial, in which the following evidence was presented.
 {¶ 3} Burrell was one of two tenants in a duplex property owned by Iwenofu. The other tenant was DeJesus. It is undisputed that the landlord did not reside at the property, but lived elsewhere at the time of the events related to this appeal. Burrell and DeJesus shared the property's backyard area in common.
 {¶ 4} At trial, Burrell testified that when she first rented the apartment in March 1999, she smelled an animal odor. She stated that when she told the landlord's wife that she was allergic to animals, the wife told her DeJesus had a dog but that it was not going to stay. Burrell said, however, the dog was always at the property after she rented the apartment and that she called the landlord "on several occasions" to complain about the dog. According to Burrell, there was a man named Jim, who lived with DeJesus. Jim was the person who walked the dog, fed it, and put it in the backyard.
 {¶ 5} Burrell admitted that, other than when the dog attacked her, the dog had never been hostile to her or her children. In fact, she testified that her children were often in the backyard with the dog and that her daughter "used to feed the dog." Burrell testified that the landlord would come by the property to collect rent at least once a month and that sometimes he would come to visit with DeJesus. When the landlord was there, however, Burrell never observed him feed or otherwise care for the dog.
 {¶ 6} The landlord's testimony directly contradicts Burrell's. In response to the question "Do you permit dogs in your rental property," the landlord said he told DeJesus when they first met he did not allow dogs in his rental property. The landlord denied knowing anything about a dog on the premises before he learned on October 6th that Burrell had been bitten. The landlord stated that he then spoke to DeJesus and found out the dog was owned by DeJesus' son, who lives in Bedford, Ohio with his mother. The landlord said he never had social visits with DeJesus and that when he did go to collect rent or do work at the property, he never saw a dog there.
 {¶ 7} DeJesus testified the dog belonged to his son, who had left it at the house the weekend before October 6th, which was a Monday. DeJesus denied the dog ever stayed regularly at his apartment and when it was there, his son would typically take the dog back to Bedford on Sundays. He testified the dog was there on the 6th only because his son had gone to a movie near Bedford on Sunday and then decided to go home instead of coming to pick up the dog. He emphasized that the dog lived with his son in Bedford and that Jim took care of the dog only the day Burrell was bitten. DeJesus stated that, as far as he knew, Iwenofu did not know about the dog. It is undisputed DeJesus leased the premises owned by the landlord.
 {¶ 8} At the close of all the evidence, the trial court found the landlord was not liable as a harborer under the statute[1] and granted the landlord's motion for directed verdict. Burrell appeals this judgment and assigns one error for our review.
 {¶ 9} "The trial court erred by directing a verdict in favor of the landlord defendant."
 {¶ 10} The question we must decide is whether the trial court erred in granting the landlord's motion for a directed verdict. Burrell argues that her claim against Iwenofu should have gone to the jury because there was sufficient evidence he harbored the dog under R.C. 955.28. We disagree.
 {¶ 11} Civ. R. 50(A)(4) states that a motion for a directed verdict shall not be entered unless, after construing the evidence most strongly in favor of the non-moving party, reasonable minds could come to but one conclusion adverse to that party.
 {¶ 12} In reviewing the propriety of a trial court's granting of a directed verdict, this court does not weigh the evidence or determine the credibility of witnesses. "A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint." Caldwell v. Gill (August 16, 2000), Summit App. No. 19860.
 {¶ 13} The statute pertinent to this appeal is R.C. 955.28(B)[2], which provides that: "the owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property." SeeHirschauer v. Davis (1955), 163 Ohio St. 105, 126 N.E.2d 337, paragraphs one and two of the syllabus.
 {¶ 14} In Manda v. Stratton (Apr. 30, 1999), Trumbull App. No. 98-T-0018, the court distinquished between one who harbors a dog and one who has physical control of a dog. The court stated: "the person who possesses and controls the premises where the dog lives is a harborer of the dog. * * * [A] keeper is one having physical charge or care of the dog." Manda, at 10, citing Khamis v. Everson (1993), 88 Ohio App.3d 220,226. "Thus, a harborer is one who has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence. Sengel v. Maddox (1945), 31 O.O. 201, 16 Ohio Supp. 137." Flintv. Holbrook (1992), 80 Ohio App.3d 21, 25; Brown v. Difford (Dec. 8, 1995), Portage App. No. 95-P-0033.
 {¶ 15} "A lease transfers both possession and control of the leased premises to the tenant and, thus, a landlord is liable only where the landlord permitted the dog in common areas of which he retained possession and control." Sizemore by Sizemore v. Spellman (July 5, 1996), Trumbull App. No. 95-T-5373, citing Brown v. Difford, supra; Godsey v.Franz (Mar. 13, 1992), Williams App. No. 91WM000008. The EleventhAppellate District case of Sizemore presented facts fundamentally the same as those in the case at bar: "The two tenants shared possession and control of the backyard with each other but not with [landlord]," who did not live on the premises. The court held nothing in the record showed the landlord had "retained the right of possession and control" of the common area. The court also stated that to find the landlord liable would require showing he knew of the dog's viciousness, but there was nothing to meet this requirement.
 {¶ 16} As noted in Hau v. Gill (July 14, 1999), Lorain App. No. 98CA007061: "The Landlord Tenant Act does not define the term `common area.' It defines residential premises as `a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of the tenants generally or the use of which is promised the tenant.' R.C. 5321.01(C). In determining how much of the land is `for the use of the tenants,' `[a] lease agreement for a building, in the absence of a provision passing a greater interest, will only pass that portion of the land which is necessary for the complete enjoyment of the building.' 65 Ohio Jurisprudence 3d (1996), Landlord and Tenant, Section 129, citing Avery v. House (1887), 1 Ohio Cir. Dec. 468, 470." Id.
 {¶ 17} Thompson v. Irwin (Oct. 2, 1997), Butler App. No. CA97-05-101, explained: "The determination as to whether a landlord is a harborer does not depend upon whether the landlord knew about the existence of a the [sic] dog but depends on whether the landlord permitted or acquiesced in the tenant's dog being kept in common areas or in an area shared by both the landlord and the tenant. * * * `"Acquiescence"' is essential to "harborship" and requires some intent.'"
 {¶ 18} In the case at bar, the evidence shows that the landlord did not live at the property. The record indicates that both Burrell and DeJesus used the backyard. Jim also used the yard. Burrell testified that she and her children were often in the backyard. Because the backyard was used by both tenants for their mutual enjoyment, it was a common area.[3]
Nor was there any evidence that the landlord retained possession and control of this common property. The landlord, therefore, was not a harborer.
 {¶ 19} Thus we need not reach the question of whether the landlord acquiesced to the dog's presence there.
 {¶ 20} The sole assignment of error is denied.
Judgment affirmed.
 KENNETH A. ROCCO, P.J., dissents with separate dissenting opinionand ANN DYKE, J., concurs in judgment only.
[1] The case against DeJesus was given to the jury for deliberation. The jury returned a verdict in Burrell's favor in the amount of $30,000.
[2] The word "harborer" was added in July 1987 when the statute was amended.
[3] We note that the record in this case provides very little detail or other factual information about the property including the backyard. For instance, there is no evidence to show how large the yard was, its shape, whether either tenant's lease mentioned the yard or what areas of the property Iwenofu remained responsible for as landlord.