MAGGARD et al., Appellants,

v.

PEMBERTON et al., Appellees.

[Cite as *Maggard v. Pemberton*, 178 Ohio App.3d 328, 2008-Ohio-4735.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22595.

Decided Sept. 19, 2008.

Hochman & Plunkett Co., L.P.A., and Gary D. Plunkett, for appellant.

Freund, Freeze & Arnold, and T. Andrew Vollmar, for appellees.

BROGAN, Judge.

{¶ 1} Jeffrey and Melissa Maggard, individually and as parents of Tyler Maggard, appeal from the judgment of the Montgomery County Court of Common Pleas in favor of Lowell Pemberton.

{¶ 2} This matter began when Tyler Maggard was bitten by a Malamute–Lab mixed-breed dog named Brutus owned by Brenda and Steve Kaminski. Prior to the bite attack, Steve and Brenda Kaminski leased a residential property located at 931 Milburn Avenue in Dayton from Pemberton, who owned and resided in a property across the street from the Kaminskis' rented home. The property is a "single-family residence on a normal size city lot with a fence around the yard," and there is no common area to the property. The Kaminskis signed a written lease for the first year they rented the house but became month-to-month tenants "a number of months" before Brutus bit Tyler Maggard on April 27, 2007. Pemberton's relationship to the Kaminskis was not limited to the landlord-tenant context. They had been personal friends for several years, and Pemberton knew that the Kaminskis owned Brutus when they moved to 931 Milburn.

{¶ 3} In November 2006, Brutus attacked and bit a child named Joseph Freitag. Upon learning of the bite, Pemberton discussed the matter with Steve Kaminski, who informed him that it was "just an accident." Steve told Pemberton that Freitag was caught in a fight between Brutus and the Kaminskis' other dog, Goliath. Pemberton informed Steve Kaminski that he did not want a biting dog on the property, but he trusted Steve's judgment that the bite was an accident.

{¶ 4} On March 24, 2007, Brutus bit another child, named Alex Hilden, requiring him to be treated in the emergency room. Dayton Police Officer Rick Oakley arrived at the Kaminskis' property to file a dog-bite report. Pemberton walked over to the scene of the bite to see what was going on at the Kaminskis' residence.

{¶ 5} Pemberton told Brenda Kaminski that this was the second bite by the dog and he did not want a biting dog in the neighborhood. Pemberton said Brenda Kaminski assured him that the dog would be removed. Pemberton said Oakley had told him that "animal control" was on the way and the dog would be euthanized. Officer Oakley did not remember hearing Brenda Kaminski's conversation with Pemberton, but he did remember hearing Brenda Kaminski state that she wanted the dog removed from her home.

{¶ 6} On the first of April, when Steve Kaminski paid his rent, Pemberton asked Kaminski if he had had Brutus put down. Pemberton stated in his deposition that Kaminski told him that they had not put Brutus down but had decided to keep Brutus and get rid of the other dog, Goliath. Pemberton asked Kaminski, "What in the H did you do that for?" Steve Kaminski testified that if Pemberton had told him to get rid of the dog, he would have done so, because Pemberton was the landlord, after all. Twenty-seven days later, Brutus bit Tyler Maggard, causing him serious injury.

{¶ 7} The Maggards brought suit against Pemberton, alleging that Pemberton was strictly liable for Tyler's injuries because he was a harborer of a vicious dog pursuant to R.C. 955.28(B) and was negligent. They sought compensatory and punitive damages.

{¶ 8} In granting summary judgment to Pemberton, the court found that he was not a harborer of a vicious dog pursuant to R.C. 955.28(B) because the lease transferred occupancy and control of the premises where Brutus resided to the Kaminskis. The court also granted summary judgment to Pemberton on the negligence claim because the court found that reasonable minds could only conclude that Pemberton was justified in believing that the Kaminskis "were removing Brutus from the property." The court did not believe that the law required Pemberton to "follow up" and make sure the Kaminskis had removed the offending dog.

{¶ 9} Appellants contend in their first assignment of error that the trial court erred in granting summary judgment to Pemberton on their negligence claim. As a general rule, a landlord may not be found liable for injuries to a third person occasioned by a vicious or dangerous animal kept by a tenant on premises within the tenant's exclusive control. See Annotation, Landlord's Liability to Third Person for Injury Resulting from Attack on Leased Premises

by Dangerous or Vicious Animal Kept by Tenant (1991), 87 A.L.R.4th 1004. See also *Parker v. Sutton* (1991), 72 Ohio App.3d 296, 594 N.E.2d 659. However, landlords out of possession can be found liable for injuries caused by the animal kept on the leased premises by the tenant when the landlord has knowledge of the dangerous or vicious animal but fails to abate the hazard with sufficient time to do so. *Flint v. Holbrook* (1992), 80 Ohio App.3d 21, 26, 608 N.E.2d 809. "[W]hen it has been shown that the animal has been kept after knowledge of [its] dangerous character has been acquired, or circumstances from which the law would imply knowledge, and an injury has followed, this would be prima facie evidence of negligence." *Hayes v. Smith* (1900), 62 Ohio St. 161, 182–183, 56 N.E. 879. Accordingly, to find the landlord liable, the court must determine that the landlord harbored the dog with knowledge of its vicious tendencies under common law. *Flint* at 26, 608 N.E.2d 809. The trial court found, and we agree, that reasonable minds could come to different conclusions as to whether Pemberton had knowledge of Brutus's viciousness.

{¶ 10} Pemberton contends that he could not have abated the hazard, however, because the Kaminskis were in control of the premises and they were entitled to 30 days' notice as month-to-month tenants before he could have evicted them from the property where Brutus was being kept. The Maggards argue the record demonstrated that Pemberton could have gotten Brutus removed if he had just asked the Kaminskis to do so after he discovered the dog was still on the property. We agree with the Maggards. Reasonable minds could conclude that Pemberton had sufficient time to have abated the hazard of the vicious dog on his leased property and, thus, could have prevented the later injury to Tyler Maggard. The appellants' first assignment of error is sustained.

{¶ 11} In their second assignment of error, the Maggards contend that the trial court erred in dismissing the Maggards' loss-of-consortium claim. In Ohio, "a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child, for loss of filial consortium." *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 251, 617 N.E.2d 1052. Because we find that there is a genuine issue of material fact as to Pemberton's negligence in removing Brutus, the loss-of-consortium issue should also be determined by the jury.

{¶ 12} In their third assignment of error, the Maggards assert that the trial court erred in granting summary judgment in favor of Pemberton on the claim for punitive damages. Under R.C. 2315.21(C)(1), "punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless * * * (1) [t]he actions or omissions of that defendant demonstrate[d] malice or aggravated or egregious fraud * * *." Moreover, "[i]n a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to

establish that the plaintiff is entitled to recover punitive or exemplary damages." R.C. 2315.21(D)(4). The Ohio Supreme Court has held that actual malice requires proof either that the defendant's conduct (1) was "characterized by hatred, ill will or a spirit of revenge," or (2) demonstrated "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 336, 512 N.E.2d 1174. Accordingly, to recover punitive damages from Pemberton, the Maggards must prove that Pemberton's conduct rose to the level of malice by clear and convincing evidence. We agree with the trial court that reasonable minds could not find that Pemberton's conduct rose to the level of malice. At most, Pemberton's conduct amounted to negligence in not making sure the Kaminskis had removed the dog. The third assignment is overruled.

{¶ 13} The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

WOLFF, P.J., and GRADY, J., concur.