[Cite as *Brown v. FMW RRI NC, L.L.C.*, 2015-Ohio-4192.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Leanne Brown, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 14AP-953 |
| v. | : | (C.P.C. No. 13CV-8488) |
| FMW RRI NC LLC, d.b.a. | : | (ACCELERATED CALENDAR) |
| Red Roof Inn et al., | | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on October 8, 2015

*Schiff & Associates Co., LPA, Terry V. Hummel,* and *Emily Valandingham,* for appellant.

*The Law Offices of Raymond H. Decker,* and *Molly G. Vance,* for appellees.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Leanne Brown ("Brown"), appeals from the decision of the Franklin County Court of Common Pleas granting FMW RRI NC, LLC, d.b.a. Red Roof Inn's ("RRI") motion for summary judgment. For the reasons that follow, we reverse and remand the issue back to the lower court for proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 2, 2013, Brown filed a complaint in the Franklin County Court of Common Pleas alleging that RRI is strictly liable for injuries she suffered stemming from a pit bull dog bite incident. Brown alleges that RRI was a harborer of the pit bull under

R.C. 955.28. The pit bull was owned by Westley Rhone,[1] who was staying as a guest at the RRI located at 2449 Brice Road, Reynoldsburg, Ohio, at the time of the incident.

{¶ 3} On the evening of March 3, 2013, Brown, who was a guest at the Extended Stay America ("ESA") hotel in Reynoldsburg, was walking her dog Yogi, a terrier and poodle mix, in the parking lot of ESA adjacent to RRI's property. (Brown Depo. 10.) According to RRI maintenance employee Estill Moore ("Moore"), there is a six foot high chain link fence owned by RRI that separates RRI's property from ESA's property. (Moore Depo., 11.) ESA shift leader Amber Raymond ("Raymond") averred that there was a "hole in the base of the fence in the vicinity of the dumpster" that had been there "for approximately 8 months" prior to this incident. (Affidavit of Raymond, ¶ 4.)

{¶ 4} Without warning, Yogi was attacked by Rhone's pit bull. The pit bull grabbed onto Yogi behind his head and began to shake him. Brown intervened, grabbing the pit bull by the collar and punching it between the eyes. The pit bull then bit Brown on the hand causing significant injury, including a broken left ring finger which required surgery. (Brown Depo. 24-25, 31.) Brown believes that the pit bull somehow got through, over, or past the fence from RRI. (Brown Depo. 18.) Columbus police, paramedics, and animal control were called to the scene. (Brown Depo. 25-26.)

{¶ 5} Cris Hansen ("Hansen") was the general manager of the RRI in question at the time of this incident. (Hansen Depo. 5-6.) Hansen testified that RRI is a pet friendly hotel that allows dogs. (Hansen Depo. 7-8.) RRI has a written pet policy. (R. 56.) The policy states, in part, that RRI "welcomes pets" and that "[p]et deposits are NOT to be requested of guests." (Emphasis sic.) (R. 56.) RRI's policy allows "one (1) well-behaved family pet * * * to stay in a guestroom with their owners * * * unless pets are prohibited by state law or ordinance"[2] and "[p]ets should be 80 pounds or under." (R. 56.) The policy allows management the "right to refuse a pet due to size or type." (R. 56.) The policy also provides that "pets are to be kept on leashes when outside guestrooms" and "[w]hen walking pets on the property, the guest is to be considerate of other guests and clean up

---

[1] Rhone is also a named party to this matter. However, he failed to appear in this matter and has never been served with a summons or complaint.

[2] The City of Reynoldsburg prohibits anyone from owning, keeping, or harboring a pit bull within the municipality. Reynoldsburg, Ohio Code of Ordinances 505.01(m)(5) and 505.35(a).

after his/her pet." (R. 56.) Hansen estimated that "25 to 30 percent" of guests had dogs, while Moore estimated that it was "70 percent." (Hansen Depo. 7; Moore Depo., 10.)

{¶ 6}   Although RRI had an established pet policy including limits on the size of the dog, Hansen testified that "I have worked for Red Roof Inn for 12 years, and I have never enforced the weight restriction" and management has "[n]ever" discussed enforcing the weight restriction. (Hansen Depo. 19.) Brown indicated that she estimated Rhone's dog to weigh close to 95 pounds. (Brown Depo. 11-12.) Nor were there any restrictions as to the type of dog that could stay at RRI. (Hansen Depo. 18.) Hansen also stated that he had never asked a tenant to remove a dog from the premises. (Hansen Depo. 19.) When dogs were outside on RRI's premises, "we request they are on a leash and under the owner's control." (Hansen Depo. 8.)

{¶ 7}   Hansen also testified as to his knowledge of Rhone. Hansen knew that Rhone kept two dogs on RRI premises, in violation of RRI's pet policy, and they "could have been Pit Bulls." (Hansen Depo. 12.) Hansen has witnessed Rhone walking his dogs on RRI property. (Hansen Depo. 17.) Hansen testified that during a "three or four-month period" Rhone "was a resident" at RRI. (Hansen Depo. 10.) Hansen believed Rhone to be homeless. (Hansen Depo. 30.) The trial court also found Rhone to be homeless. (Decision, 7.)

{¶ 8}   On May 7, 2014, RRI filed a motion for summary judgment in this matter, which was granted by the trial court on October 24, 2014. The trial court held that RRI was not a harborer of Rhone's dog under R.C. 955.28(B) because Rhone's stay at RRI was temporary, and therefore not sufficient to make RRI the dog's home. (Decision, 6.)

## II. ASSIGNMENT OF ERROR

{¶ 9}   Brown appeals assigning a single error:

> The Trial Court Erred in Granting Defendant's Motion for Summary Judgment.

## III. STANDARD OF REVIEW

{¶ 10} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.,* 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank*

*Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995). However, the party against whom the motion for summary judgment is made is entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

## IV. SUMMARY JUDGMENT INAPPROPRIATE

{¶ 11} Ohio's dog bite statute, R.C. 955.28, is a strict liability statute. *Jones v. Holmes*, 12th Dist. No. CA2012-070133, 2013-Ohio-448, ¶ 10. To prevail in a dog bite case the plaintiff must prove " '(1) ownership, keepership, or harborship of the dog, (2) the actions of the dog were the proximate cause of damage, and (3) the monetary amount of damages.' " *Id.,* quoting *Diaz v. Henderson,* 12th Dist. No. CA2011-09-182, 2012-Ohio-1898, ¶ 7; *Hirschauer v. Davis*, 163 Ohio St. 105 (1955), paragraph 3 of the syllabus. There is no dispute that RRI is not an owner or keeper of Rhone's pit bull.

{¶ 12} The court in *Padgett v. Sneed,* 1st Dist. No. C-940145 (July 19, 1995), held that:

> [S]ince the revisions of the statute in 1987, the issue of whether one is a harborer must also now be submitted to the jury. We first hold, in keeping with the syllabus law of *Hirschauer*, that the issues of owning, harboring or keeping of the dog, proximate cause and damages are ordinarily questions of fact to be determined by a jury in a dog bite case. See, also, *Ohio Casualty Ins. Co. v. Robison* (1982), 5 Ohio App.3d 223, 451 N.E.2d 253; *Dunn v. Platt,* [10th Dist. No. 88AP-268 (Dec. 6, 1988)] *supra.*

"[T]he issue of whether one is a harborer of a dog is an issue of fact, not a question of law." *Jones* at ¶ 25. Furthermore, the court in *Thompson v. Irwin*, 12th Dist. No. CA97-05-101 (Oct. 27, 1997), stated that summary judgment is only proper if there are no genuine issues of fact on either of the first two prongs of the test.

{¶ 13} While harborer is not explicitly defined by statute, courts have defined it to mean " 'one who has *possession and control* of the premises where the dog lives, and silently acquiesces to the dog's presence.' " *Coontz v. Hoffman*, 10th Dist. No. 13AP-367, 2014-Ohio-274, ¶ 12, quoting *Samas v. Holliman,* 10th Dist. No. 02AP-947, 2003-Ohio-

1647, ¶ 14. This court in *Hilty v. Topaz*, 10th Dist. No. 04AP-13, 2004-Ohio-4859, ¶ 8-9, stated:

> To determine whether a person is a 'harborer' of a dog, "the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives." *Godsey* [*v. Franz*, 6th Dist. No. 91WM000008 (Mar. 13, 1992)]. A harborer is one who is in possession and control of the premises where the dog lives and silently acquiesces in the dog being kept there by the owner. *Flint v. Holbrook* (1992), 80 Ohio App.3d 21, 25, 608 N.E.2d 809, citing *Sengel v. Maddox* (1945), 31 O.O. 201. Acquiescence requires some intent. *Bundy v. Sky Meadows Trailer Park* (Oct. 23, 1989), Butler App. No. 89-01-002. In *Sengel, supra*, the court determined that liability as a harborer is established if the owner of the premises knowingly permitted the dog to live and make its home on his land.
>
> A landlord may be liable as a harborer if he permitted the tenant's dog in common areas since a landlord is not in possession and control of the tenant's premises. A lease agreement transfers both occupation and control of the subject premises to the tenant. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 297-298.

A person need not, however, act toward the dog as though he were its owner in order to be the harborer of the dog, *Mehmert v. Kelso*, 6 Ohio App. 69, 71 (1st Dist.1915), or exercise any control over the dog, or feed it. *Sengel v. Maddox,* 16 Ohio Supp. 137, 203 (1945).

{¶ 14} As the record indicates, RRI is a pet friendly hotel which permits guests to keep pets with them. (R. 56.) Furthermore, Hansen testified to knowing about Rhone staying with his dogs at the hotel, and permitting the dogs to remain at the hotel. (Hansen Depo. 11.) RRI clearly permitted dogs to be in the common areas of the hotel property. (R. 56; Hansen Depo. 8, 17.) As such, RRI acquiesced to the presence of Rhone's dog. However, the trial court found that RRI was not a harborer of Rhone's dog because Rhone was staying only temporarily at RRI, and therefore not living there. (Decision, 6.)

{¶ 15} Many Ohio courts have interpreted the living prong to mean something more than just a temporary stay. *Root v. Thousand Adventures of Ohio*, 9th Dist. No. 96CA6477 (Apr. 2, 1997) (holding that a dog did not live at a campground where another patron was attacked, because the campground limited guests' stays to 21 days); *Ryan v.*

*Van DeWalle*, 10th Dist. No. 77AP-611 (Dec. 29, 1977) (finding that a dog who sporadically stayed on the back of a property with its owner did not live on the premises). While there are examples of what constitutes permanency and temporary living, there is no established standard to distinguish between the two.

{¶ 16}  The trial court reached its conclusion after looking at the nature of Rhone's stay while at RRI.

> Mr. Rhone's occupancy at RRI was temporary and intermittent. According to RRI's occupancy records, * * * Mr. Rhone stayed there for 46 days from January 11, 2013, to March 10, 2013. During that same span, he was cumulatively absent 12 days. The longest continuous stay was 10 days, from January 29 to February 7. He apparently paid for 1 week at a time at the most. He stayed in different rooms. He paid cash. Because this is a hotel, when Mr. Rhone left the rooms, he would have to have removed all of his personal property from the premises.

(Decision, 6.)

Upon making these findings, the trial court concluded that no issue of fact remained as to whether Rhone was living at the hotel with his dog. However, while RRI's records can be somewhat confusing, our review of the record finds that Rhone actually stayed at RRI for 54 days during the 2-month span from January 11 to March 10, 2013, and was at the hotel for 41 consecutive days from January 28 to March 10, 2013. (R. 57.) Following the incident, Rhone checked out of the hotel. He then attempted to check in several weeks later. (Hansen Depo. 31.) There is no evidence that RRI had a policy of limiting the duration of guests' stays, nor evidence that Rhone did not intend to stay or had another residence.

{¶ 17} Certainly there is no magic number which converts a temporary stay into a more permanent one. As the trial court noted, "the distinction between 'temporary' and 'permanent' occupancy is far from absolute." (Decision, 7.)  However, construing the facts in the light most favorable to Brown, we believe that a reasonable jury could find that Rhone was living at RRI with the requisite degree of permanency at the time of the incident. Rhone was homeless. He stayed at the hotel for the better part of two months, only missing five days in that span of time. RRI also knew that Rhone had preferences for ground floor rooms.  (Hansen Depo. 11.) Furthermore, Rhone's attempt to check back into

the hotel may indicate an intent to stay more permanently at RRI. As the trial court stated, "it may certainly be found that some dogs are living at hotels." (Decision, 9.)

{¶ 18} The trial court held that even if Rhone and his dog were living at RRI, RRI was still not a harborer because it did not maintain possession and control of the premises of where the dog was staying. (Decision, 11.) In reaching this finding, the trial court noted that hotel guests have exclusive possession and control over their room during a stay at the hotel. *State v. Bowling*, 8th Dist. No. 93052, 2010-Ohio-3595. As such, the trial court was limiting "the premises" solely to Rhone's hotel room.

{¶ 19} However, in analogous landlord-tenant cases, courts have extended "the premises" to the common areas of the property. This court in *Hilty* held that, "[a] landlord may be liable as a harborer if he permitted the tenant's dog in common areas since a landlord is not in possession and control of the tenant's premises." *Id.* at ¶ 9. In *Godsey v. Franz*, 6th Dist. No. 91WM000008 (Mar. 13, 1992), the court stated:

> [I]f the landlord has established rules for the maintenance of pets by his tenants, such rules militate against the finding of acquiescence. On the other hand, where the landlord acquiesces in the keeping of the tenant's dog in common or joint areas, by allowing it to use or roam freely over such areas, the two elements of acquiescence and possession and control are present, and the landlord may be held liable as a harborer for damages or injury caused by that dog.

In the present case, RRI's pet policy stated that pets were to be kept on "leashes" outside guestrooms. However, Brown has introduced evidence that would tend to show that RRI did not always follow this policy and allowed some dogs, in addition to Rhone's pit bull, to "roam freely" in the common areas. According to Raymond, the "hole in the base of" RRI's "fence * * * had gradually been enlarged by dogs coming from the Red Roof property." (Affidavit of Raymond, ¶ 4.) Construing the evidence in the light most favorable to Brown, the inference is that these dogs were not constrained.

{¶ 20} In addition, RRI allows pets to be in the common areas of the premises. (R. 56; Hansen Depo. 8, 17.) These areas are under the exclusive possession and control of RRI, inasmuch as RRI has the ability to include and exclude people from it. *Kovacks v. Lewis*, 5th Dist. No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 34, citing *Cooper v. Roose,* 151 Ohio St. 316, 319 (1949). Brown has presented evidence that all dogs, and specifically

Rhone's dog, were allowed in the common grounds of the hotel. (R. 56; Hansen Depo. 8, 17.) Similar to a landlord-tenant action, Rhone had exclusive possession and control over his room. *Bowling.* However, RRI had control over the common areas.

{¶ 21} Construing these facts in a light most favorable to Brown, a jury could find that Rhone was living at RRI with the requisite degree of permanency at the time of the incident, and that RRI had sufficient possession and control of the common areas to be a harborer. Absent any direct authority demarcating between temporary and permanent living, we believe that the issue of whether Rhone and his dog were living at the hotel is one that is suited for a jury. While this is certainly a close legal question, and bearing in mind that "harboring" is ordinarily a question of fact to be determined by a jury, we believe under these facts that summary judgment is inappropriate. Accordingly, we sustain Brown's assignment of error.

## V. DISPOSITION

{¶ 22} Brown's assignment of error is sustained, therefore, the judgment of the Franklin County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

*Judgment reversed and remanded.*

TYACK and KLATT, JJ., concur.

_____