[Cite as *Purcell v. Stemen*, 2023-Ohio-4086.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

MONICA A. PURCELL, ET AL.,

    PLAINTIFFS-APPELLANTS,

    v.

GENE W. STEMEN, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 1-23-28

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2020 0377

**Judgment Affirmed**

**Date of Decision: November 13, 2023**

APPEARANCES:

    *Matthew H. Huffman* and *T. Blain Brock* for Appellants

    *Dalton J. Smith* for Appellees

**MILLER, P.J.**

{¶1} Plaintiffs-appellants, Monica A. Purcell ("Monica") and Keith A. Purcell, appeal the trial court's decision to grant, in part, summary judgment to Defendants-appellees, Gene W. Stemen ("Stemen") and Amber Tickle ("Tickle"). This case arises from an incident in which a dog owned by Tickle bit Monica. The trial court's decision resulted in dismissal of Appellants' claim for strict liability under R.C. 955.28. Appellants argue the trial court erred in finding, under R.C. 955.28, Monica was the "keeper" of the dog that bit her and, therefore, is barred from recovering under the statute. For the reasons that follow, we affirm.

## I.   FACTS AND PROCEDURAL HISTORY

{¶2} In April of 2019, Appellees were in a relationship and decided to take a vacation to Florida. Tickle owned a dog named Zeus, a pitbull boxer mixed breed. Appellees did not bring Zeus to Florida but, instead, decided to chain Zeus in Stemen's backyard—which had no fence—for the duration of their vacation. Appellees chained Zeus to a long concrete stake that Stemen hammered into the ground. Stemen placed food and water dishes, along with a doghouse, in his backyard for Zeus. Stemen testified he also arranged for a co-worker to stop by his house in order to give Zeus food and water and check on the dog's wellbeing while Appellees were on vacation.

{¶3} Appellants lived next door to Stemen. Monica testified that she and her husband Keith were (and remain) friends with Stemen. The day before Appellees

left for Florida, Monica went over to Stemen's property, where Stemen told her they would be going on vacation and Zeus would stay chained up in his backyard. This is when Monica first saw Zeus, who at that time was in a reinforced cage, barking and growling. Monica testified that Stemen told her one of his co-workers was going to be checking on the dog every day. Monica also testified she had owned and trained dogs for a long time. However, Appellees never asked Monica to watch or care for Zeus, and Monica never offered to watch or care for Zeus.

{¶4} On April 16, 2019, approximately six days after Appellees had left for Florida, Monica's visiting relatives informed her there was a pitbull loose in front of her house. She went outside and discovered that Zeus' chain had come undone from the concrete stake in Stemen's backyard and Zeus had entered her yard, dragging the entire chain from his collar. She went back into her house, grabbed a gun for protection purposes in case Zeus were to attack, and headed back outside. Without incident, she was able to walk Zeus back to Stemen's yard. She secured the dog by chaining Zeus to the stake, where the dog had previously been chained. Soon thereafter, Monica provided Zeus with food and water from her own home and, to ensure the dog could reach everything, moved Zeus from being chained to the concrete stake to instead being chained to a porch post at Stemen's house. Later that same day, Monica returned to Stemen's yard and gave Zeus food another time. Once again, she had no issues with Zeus.

{¶5} The next day, Monica decided to check on Zeus again. She went to Stemen's backyard and noticed that, although Zeus remained secured on the chain, the chain was caught on a stone in the yard. Monica decided to move the stone to free the chain. However, as she went to move the stone, Zeus attacked her. Monica raised her arm to defend herself, and Zeus bit her hand, wrist, and forearm. She was able to free her bleeding arm from Zeus' grip and get to the hospital, where testing revealed she had suffered nerve damage. She underwent treatment for her injuries.

{¶6} Appellants then brought this lawsuit, claiming strict liability under R.C. 955.28, negligence, punitive damages, and loss of consortium. Eventually, Appellees moved for summary judgment on all claims, and Appellants moved for partial summary judgment on the issue of strict liability.

{¶7} The trial court granted, in part, Appellees' motion, dismissing Appellants' claim for strict liability. However, Appellants' negligence-based claims remained. The trial court found "there [was] no just cause for delay pursuant to Ohio Civ.R. 54(B)" and this appeal was instituted.

## II. ASSIGNMENT OF ERROR

{¶8} Appellants raise a single assignment of error for our review:

### Assignment of Error

**The trial court erred, as a matter of law, by holding that Plaintiff-Appellant Monica Purcell was the dog's "keeper" under the Ohio dog-bite statute [Decisions Dated March 16, 2023 and April 26, 2023]**

## III.    DISCUSSION

{¶9} In their assignment of error, Appellants argue the trial court's determination that Monica was the dog's "keeper" under R.C. 955.28(B) at the time of the injury is inconsistent with Ohio caselaw and creates an entirely new class of individuals that will be considered "keepers" under the dog-bite statute.    We disagree.

### A.  Standard of Review

{¶10} "When reviewing the decision of a trial court granting or denying a party's motion for summary judgment, an appellate court applies a de novo standard of review." *Smathers v. Glass*, ___ Ohio St.3d ___, 2022-Ohio-4595, ¶ 30.   "The appellate court conducts an independent review of the evidence without deference to the trial court's findings."  *Id.*  We examine the evidence available in the record, including deposition or hearing transcripts, answers to interrogatories, written admissions, affidavits, written stipulations of fact, stipulated exhibits, and the pleadings, and "determine[], as if [we] were the trial court, whether summary judgment is appropriate" pursuant to Civ.R. 56. *Id.*; *see also* Civ.R. 56(C).  "[A]ny inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers* at ¶ 32.  Ultimately,

> [t]o prevail under Civ.R. 56, the party moving for summary judgment must show the following: '(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law;

and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.'

*Id.* at ¶ 31, quoting *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *see also* Civ.R. 56(C).

### B. Applicable Law

{¶11} The statute at issue, R.C. 955.28(B), imposes strict liability against particular categories of people for injuries caused by a dog, subject to certain exceptions not at issue in this appeal. It states, in relevant part:

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property. * * *

R.C. 955.28(B). The statute is to be strictly construed. *Pulley v. Malek*, 25 Ohio St.3d 95, 97, 495 N.E.2d 402 (1986). Also, "[a]ssumption of the risk is not a permissible defense to an action" brought pursuant to the statute. *Id.* at syllabus.

{¶12} This Court has held that a person who is a dog's "keeper" is barred from recovering under R.C. 955.28(B) for damages proximately caused by that dog. *Johnson v. Allonas*, 116 Ohio App.3d 447, 450, 688 N.E.2d 549 (3d Dist.1996) (explaining that a "keeper" of a dog under R.C. 955.28(B) cannot avail himself or

herself of the protections afforded by the statute); *see also Khamis v. Everson*, 88 Ohio App.3d 220, 227, 623 N.E.2d 683 (2d Dist.1993) ("a 'keeper' is not within the class of people that the legislature intended to protect by enacting the strict liability provision contained in R.C. 955.28(B)"); *Lewis v. Chovan*, 10th Dist. Franklin No. 05AP-1159, 2006-Ohio-3100, ¶ 10 ("Ohio courts have held that an injured 'keeper' cannot avail herself of the protections afforded by R.C. 955.28(B)"). However, it is possible "'keepers' or 'harborers' of dogs that proximately cause injury to them still have a common-law cause of action against the dog's owner." *Khamis* at 227.

**{¶13}** The term "keeper" is not statutorily defined. However, this Court has held that a dog's "keeper" is "the person in physical charge or care of the dog at the time of the accident." *Johnson* at 449, citing *Garrard v. McComas*, 5 Ohio App.3d 179, 182, 450 N.E.2d 730 (10th Dist.1982); *see also Schultz v. State*, 32 Ohio St. 276, 281 (1877) ("[t]he word 'keeper' is defined to be one who has the care, custody, or superintendence of anything"); *Black's Law Dictionary* (11th Ed.2019) (defining "keeper" as "[s]omeone who has the care, custody, or management of something and who usu. is legally responsible for it <a dog's keeper> <a keeper of lost property>").[1]

---

[1] Curiously, some courts have cited *Garrard* as providing the definition of "keeper" under the statute, yet left out the "care" portion of the definition. *See, e.g., Flint v. Holbrook*, 80 Ohio App.3d 21, 25, 608 N.E.2d 809 (2d Dist.1992) (citing *Garrard*, but stating that "[a]n owner is the person to whom a dog belongs, while a keeper has physical control over the dog"); *Khamis*, 88 Ohio App.3d at 226 (quoting *Flint*'s definition, but also citing *Garrard*). We note that those cases did not require the determination of whether the plaintiff was the dog's "keeper." *Flint* at 26 (involving whether defendant was a "harborer" under the statute); *Khamis* at 223 ("appellant does not challenge the trial court's finding that appellant was a 'keeper' within the meaning of R.C. 955.28").

{¶14} Designation as the dog's "keeper" can be fluid, changing with the circumstances. In other words, a person can become the dog's "keeper" for a period of time and then no longer be deemed the dog's "keeper," depending on the situation.[2] *See Lewis*, 2006-Ohio-3100, at ¶ 12 ("courts in Ohio have found a person to be a keeper even when the physical charge or care of the dog is only temporary"); *Chester v. Lima Corr. Inst.*, Ct. of Cl. No. 2003-01091-AD, 2003-Ohio-3892, ¶ 1, 4, 31 (plaintiff-inmate, who was bitten while pulling the dog away from another tethered dog during a dog training program after plaintiff had put the dog on a leash and fastened the leash to a metal bolt, was the dog's "keeper" at the time he was bitten).

### C. Analysis

{¶15} Given this background, the limited question we must decide is whether Monica was Zeus' "keeper" under R.C. 955.28(B) at the time Zeus bit her. The material facts relevant to this issue are undisputed. Applying those facts to the law discussed above, a reasonable jury could only conclude that Monica was Zeus' "keeper" under the statute at the time the dog bit her.

{¶16} The day before the bite, after Zeus had gotten loose and been found in her yard, Monica brought Zeus back to Stemen's yard and secured Zeus back to where the dog had been located. Then she provided Zeus with food and water from

---

[2] Of course, a person can likewise become a dog's "owner," then sell the dog to another person and no longer be its "owner."

her own home, and she established a new perimeter for the dog's restricted movement by changing where Zeus had been chained (the stake) to a new location (the post at Stemen's house). Later that same day, she checked on Zeus again, returning to Stemen's yard and giving the dog food another time. The next day, Monica continued to watch over Zeus, checking on the dog once again and returning to Stemen's yard to find Zeus' chain—which Monica had previously moved by securing it to a different place—had become caught on a stone. It was at this time, while Monica continued to ensure the dog's care and attempted to reestablish the full perimeter she had set for Zeus by freeing his chain from the stone, when Zeus bit her. Thus, on multiple occasions over a couple of days when the dog's owner was continuously not present, Monica gave Zeus food and water and took other efforts to ensure Zeus' wellbeing. Importantly, the interaction when Zeus bit Monica was not the initial interaction that involved her checking on and caring for the dog that ended up biting her.

{¶17} During her deposition, Monica acknowledged she had been caring for Zeus, and she testified she did so because she is a "[d]og lover" who "want[s] to make sure they're taken care of." (M. Purcell Dep. Tr. at 86-87, 90). She also acknowledged she "didn't have to care for the dog" but instead could have ignored the dog, contacted the dog warden, contacted the police, or contacted Stemen. (*Id.* at 90). She also testified that "everything [she] did was over [her] concern for the welfare of the dog," even though Stemen never asked her to take care of Zeus. (*Id.*

at 86-87, 90).  In other words, she acknowledged the purpose of her interactions with Zeus was to care for the dog when she believed no one else was doing so.  It does not matter whether Appellees asked Monica to take care of Zeus or that Monica never offered to take care of Zeus.  *See, e.g., Johnson*, 116 Ohio App.3d at 448 (no dispute that plaintiff was the dog's "keeper" at the time of the accident, despite not being asked to take physical charge or care for the dog, where plaintiff let herself into the dog owner's house, noticed the dog wanted to go outside, leashed the dog, and took it outside); *Lewis*, 2006-Ohio-3100, at ¶ 13 (rejecting appellant's argument that, because "she was not specifically charged with grooming" the dog, a jury question existed regarding whether she was its "keeper").  Moreover, nothing in the statute's language indicates a requirement that a person be asked (or ask) to be in physical charge or care of the dog in order to become its "keeper."  *See* R.C. 955.28(B).

**{¶18}** At the least, Monica was actively caring for the dog at the time of her injury.  Monica's actions are sufficient to find she was Zeus' "keeper" when the dog bit her.  *Johnson*, 116 Ohio App.3d at 449 (a "keeper" is "the person in physical charge *or* care of the dog at the time of the accident" [emphasis added]).  Therefore, she is barred from recovering under R.C. 955.28.  *Id.* at 450.  There is no genuine issue of material fact, it appears from the evidence that reasonable minds can only conclude that Monica was the dog's "keeper" under R.C. 955.28 (even when viewing the evidence in favor of Appellants), and, therefore, Appellees are entitled

Case No. 1-23-28

to judgment as a matter of law on the strict liability claim. Civ.R. 56. We affirm the trial court's decision to grant Appellees summary judgment on the Appellants' strict liability claim. *Johnson*, 116 Ohio App.3d at 448-51 (affirming summary judgment for defendant on plaintiff-keeper's strict liability claim under R.C. 955.28); *Lewis*, 2006-Ohio-3100, at ¶ 5, 11-14, 19 (same).

## IV. CONCLUSION

{¶19} For the foregoing reasons, Appellants' assignment of error is overruled. Having found no error prejudicial to the appellants in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

*Judgment Affirmed.*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/hls**